State v. Heath.

---

## THE STATE v. CHARLES HEATH, Appellant.

### Division Two, November 14, 1911.

1. **MURDER: Self-defense: Withdrawal.** One who attacks another, manifestly intending by violence to take this other's life or do him great bodily harm, cannot exercise the right of self-defense unless and until he has first withdrawn from combat. A withdrawal is not a mere retreat; such withdrawal must be in good faith, and the fact of change of purpose must be known to the other person. There is no abandonment where the fight is continuous.

2. ——: ——: ——: **Instructions.** Where there is no evidence tending to show a withdrawal from a combat feloniously begun, an instruction is not erroneous which denies to defendant the right to kill in self-defense. Nor, under the same circumstances, can the defendant complain of the form of an instruction defining his right of withdrawal, for that instruction was too favorable to him.

3. **INSTRUCTIONS: Manslaughter in Fourth Degree.** The court gave an instruction fully covering the question of manslaughter in the fourth degree, and telling the jury that defendant's "passion" must have been aroused by deceased's having assaulted or struck defendant with a knife or stone. It is held, therefore, that, since the given instruction is correct, it was not error to refuse an instruction asked by defendant, which left it to the jury to say what is a reasonable provocation.

4. ———: **Threats: Who Must Show Error.** Counsel make objection to an instruction set out in the opinion, but no authority is shown against it. The instruction seems to be a clear statement of the law as applied to the evidence, and he who alleges error must show it, which has not been done.

5. ———: **Statements of Counsel.** It was not error to instruct the jury that statements of counsel are not evidence and should not be considered by the jury in arriving at their verdict. Such instruction did not nullify the testimony in the case of one of defendant's counsel, nor did it destroy the effect of the argument to the jury by defendant's counsel.

6. ———: **Sympathy, Prejudice or Bias.** It was not error upon the part of the trial court to refuse an instruction asked by defendant in this case which would have told the jury that they should not permit sympathy, prejudice or bias to influence them. Such an instruction may be helpful in some cases, but the defendant cannot complain of its refusal in this case.

7. **EVIDENCE: Trial for Murder: Collateral Issue.** The defendant offered a witness to prove in detail that, before the killing, in the absence of defendant and out of his hearing, deceased at the school house punished defendant's daughter, called her a liar, tore her clothes, etc. It is held that such evidence in detail was rightly excluded by the trail court. To admit it would be to enter into the trial of a collateral issue.

8. ———: **Opinion: Cross-examination.** The witness Shira testified that he placed himself in the position "that Susie Thomas testified she occupied," and that from that point the scene of the combat was not visible. This testimony was objected to as "his opinion of what the testimony of Susie Thomas was." The objection was overruled, and, it is held, rightly so, for whatever error there may have been in that mode of examination was cured by the fact that the witness was fully cross-examined as to the point of his observation.

9. **INSTRUCTIONS: Evidence: Read from Record and Deposition.** The defendant asked, and the trail court refused, an instruction which would have told the jury that testimony read to them "from the record and deposition . . . is competent evidence" and to be considered·"the same as if those witnesses were present and examined here in open court at this trial, as other witnesses under oath." It is held that such refusal was correct. The jury must be presumed to know that such things are testimony; and for the jury to consider that testimony the same as if the witnesses were present was an impossibility. The instruction was unnecessary,·to say the least of it.

Appeal from Lawrence Circuit Court.—*Hon. F. C. Johnston*, Judge.

AFFIRMED.

*M. E. Benton, Felix Lindsay, J. A. Sturgis, W. B. Skinner* and *George Hubbert* for appellant.

(1) No futile attempt to withdraw, or strenuous endeavor to recede and decline further struggle, could avail defendant anything whatever under the terms of instruction 10. It is an undeniable fact, that the heat of conflict was such that notwithstanding any manifest attempt of defendant to withdraw and flee, no one can say that there was an appreciable cessation of the difficulty in any bystander's view— no moment of distinct withdrawal in fact as defendant receded and his antagonist advanced with knife or pursued with stone. The mischief at this point was also intensified by instruction 12, which carried to the jury at least the implication that, after all, there was no self-defense or amelioration in the case for defendant after he once appeared to have entered into the conflict—no justification or excuse or mitigation for him at any later point of time in the difficulty—nothing could be predicated upon any desired, announced, endeavored and attempted, but abortive, withdrawal or flight from the field and fact of combat. Recurring to instruction 12, in juxtaposition with No. 10, there is presented a forceful and misleading inconsistency with the settled law, which is confusing and misleading, in that it declares, "if defendant provoked the difficulty or began the quarrel, with the purpose of taking advantage of the deceased and of taking his life, or doing him some great bodily harm, then there is no self-defense in the case, etc. . . . and defendant is guilty of murder in the first degree, and the jury

should so find." That is not the law of this case. If other instructions of the series be deemed correct in form and substance, as given, they could not be regarded as corrective of No. 12. The verdict herein very evidently follows instruction 12. (2) Instruction 9 as given does not permit assessment of punishment as for manslaughter upon any other ground than as therein mentioned, viz.: "While the defendant was in a violent passion suddenly aroused by reason of Mosier having assaulted or struck him with a knife or stone." This does not exhaust the category of provocations sufficient to reduce intentional killing to manslaughter. Other reasonable provocation than knife-cut or stone-bruise may arouse the necessary heat of passion, even short of "violent" passion, to put a culprit within the mercy of the statute. Instruction "I" should have been given, defining the "sudden heat of passion on reasonable provocation" properly entering into manslaughter as an element. Partlow's Case, 90 Mo. 608; Cable's Case, 117 Mo. 380.

*Elliott W. Major*, Attorney-General, and *Charles G. Revelle*, Assistant Attorney-General, for the State.

(1) There was no error in permitting Charles Shira, in rebuttal, to describe the location and general surroundings of the place from which Susie Thomas, witness for appellant, had testified that she had witnessed the difficulty, nor was it error to permit him to state that from said position it was impossible, on account of certain obstructions, to see the place where the difficulty occurred. State v. Long, 209 Mo. 382. (2) The court gave instruction 9. The authorities on this subject are reviewed at length in State v. Gartrell, 171 Mo. 516, and State v. Sharp, 233 Mo. 269. There is not in all this record the slightest evidence tending to prove, in the remotest

degree, any assault made upon appellant by Mosier, except with knife or stone. The rule that instructions must be predicated upon the facts developed at the trial applies to criminal cases. State v. Hargraves, 188 Mo. 337; State v. Callaway, 154 Mo. 91. Whenever the words "violent passion" are used in an instruction, it is proper to define them. State v. Skaggs, 159 Mo. 581; State v. Strong, 153 Mo. 555. The purpose, however, of defining these terms is not to benefit the accused, but to limit and restrict to a lawful provocation the one which reduces the killing to manslaughter. State v. Sharp, supra; State v. Rose, 142 Mo. 429; State v. Kinder, 184 Mo. 297. Appellant's instruction lettered "I," on manslaughter, was properly refused, because it authorizes a verdict on manslaughter, "if the jury finds and believes that the defendant in a sudden heat of passion, on a reasonable provocation, intentionally shot and killed deceased without malice, etc." No definition of "heat of passion," or "reasonable provocation" is contained in this instruction, and none was offered in connection therewith. It was, for this reason, properly refused. State v. Reed, 154 Mo. 129; State v. Sharp, supra. (3) Instruction 12 is in the exact words of the instruction recommended by this court in State v. Gilmore, 95 Mo. 563, and is in keeping with the doctrine uniformly announced and applied by this court. State v. Partlow, 90 Mo. 614; State v. Dunn, 221 Mo. 542; State v. Darling, 202 Mo. 171; State v. Gordon, 191 Mo. 127, 128; State v. Bailey, 190 Mo. 286, 291; State v. McDaniel, 94 Mo. 309; State v. Rose, 92 Mo. 207; State v. Gieseke, 209 Mo. 334, 345; State v. Harrell, 97 Mo. 109. It is also a copy of the instruction given on the first trial of this cause, and silently approved on the former appeal. The soundness of instruction 10 is shown by what is said in this case on the former appeal when the court was considering the instruction then given on this subject. State v.

Heath, 221 Mo. 588; State v. Patterson, 159 Mo. 562, and cases cited under preceding paragraph. Instructions 10 and 12 must be read together. State v. McKinsey, 177 Mo. 714; State v. Copeman, 186 Mo. 108; State v. Sharp, 183 Mo. 715. These two instructions, when read together, are a rescript of instruction 12, given in the case of State v. Sebastian, 215 Mo. 76.

ROY, C.—This is a prosecution for murder. The defendant was convicted in August, 1907, in the Lawrence Circuit Court, of murder in the second degree, and on appeal the judgment was reversed and remanded by this court in an opinion by Judge Fox, reported in 221 Mo. 565. On a retrial in December, 1909, the defendant was convicted of murder in the first degree and sentenced to imprisonment in the penitentiary for life.

A full and clear statement of the facts appearing on the first trial appears in connection with the opinion on the former appeal, and counsel for defendant here concede that it is a statement of the facts on the second trial, except in a few particulars which occurred at the second trial.

There was evidence of several new witnesses tending to disprove the alleged threats of the defendant. Dr. Smiley testified that about the middle or last of February, 1907, he examined defendant and found a clean, smooth cut three-fourths of an inch long in the top of his right ear, clear through the ear, and a bruise behind the ear below the cut, the skin being off.

The defendant offered to prove by Martha McGrew that on February 21, before the killing, in the absence of defendant, and out of his hearing, deceased at the school house punished defendant's daughter, called her a liar; that he tore her clothes, grabbed her by the sleeve and tore her sleeve nearly out; jerked

her down on one of the seats and on the stove and whipped her. To which testimony the State objected as follows: "The State objects to the witness testifying in detail to anything that was said, done or happened between the deceased and Lou Heath, defendant's daughter, in the absence of defendant, because any punishment or offer to punish defendant's daughter in his absence and out of his hearing would constitute no justification, defense or excuse for defendant assaulting or killing deceased. This is a matter for the defendant to have redress in the courts of law or through the school board, as provided by law. Further the State offers no objection to the witness stating anything she may have told defendant, if she told him anything, in regard to the abuse or punishment by deceased of his daughter, and the State makes no objection to her stating the fact that he corrected or punished defendant's daughter, but the State does object to her going into detail and stating what occurred for the reasons above mentioned."

The court sustained the objection on the ground that evidence as to the details of the whipping was not competent, and defendant excepted, but the court allowed testimony to the fact that deceased whipped defendant's daughter in violation of his agreement with the board.

Objection was made to remarks of counsel for the State in their argument to the jury, but the attention of the trial court was not called to that point in the motion for a new trial.

The deposition of Dr. Williams as to the nature of the wound on the ear of defendant was read to the jury, and also the evidence of Clifford Noel, an eyewitness of the difficulty, as contained in the bill of exceptions of the former trial.

The defendant testified in substance, among other things, that he first accosted the deceased. They got into a quarrel and called each other a liar.

Mosier threatened to cut defendant into shoe strings and advanced on defendant with a knife. Defendant took a few steps, told Mosier to stop, and grabbed up two rocks. They were about ten feet apart. Mosier picked up two rocks. Defendant threw a rock at Mosier, and Mosier threw one at defendant, who was then on the east side of Crispin's gate, while Mosier was on the west side. Defendant threw another rock at Mosier, who dodged and threw another at defendant, who dodged by turning and was struck on the top or back of the head. Mosier then made at defendant with a knife, who dodged back and ran three or four steps, then turned to Mosier, who, as defendant testified, kept so close to defendant that defendant had no chance to get another rock. Defendant told Mosier to stop, and took five or six steps backward and told Mosier to "hold up there." Defendant was moving east and says that he backed up against a wire fence. (The road in which they were at the time ran east and west.) Mosier kept coming with the knife and defendant took the pistol from his pocket and shot Mosier.

On cross-examination defendant testified that the fight continued right along from the beginning until Mosier was shot, both busy all the time, Mosier fighting and Heath defending.

Defendant read in evidence the testimony of Susie Thomas given at the preliminary examination before Charles Shira, a justice of the peace. She stated that she stood in six or eight feet of the corner of the barn and saw Mosier with his hand up and defendant backing.

Charles Shira, the justice, was placed on the stand by the State and the following question asked him: "You may state if you went and put yourself in the position there that Susie Thomas testified she occupied there at the northeast corner of Ferry's barn, from which she viewed the scene of this difficulty."

It was objected to as follows: "We renew our objection. It is not competent to give an opinion and judgment of the result of this examination, because it is his opinion of what the testimony of Susie Thomas was." Which objection was overruled and exception taken.

The witness then stated that he went to the point where she stated about eight or ten feet from the northeast corner of the barn, and that on account of an old building, since fallen down, it was impossible to see across where the difficulty was. He was fully cross-examined as to the location of the various points in controversy.

Among the instructions given by the court of its own motion were the following:

"9. If you believe and find from the evidence beyond a reasonable doubt that the defendant, Charles Heath, at the County of McDonald and State of Missouri, on or about the 22d day of February, 1907, intentionally shot and killed Clarence Mosier with a pistol without malice and without premeditation as these terms are explained in these instructions and not in the necessary defense of his person as in these instructions explained, and while the defendant was in a violent passion suddenly aroused by reason of Mosier having assaulted or struck him with a knife or stone, you will find the defendant guilty of manslaughter in the fourth degree and assess his punishment at imprisonment in the penitentiary for a term of two years, or at imprisonment in the county jail for not less than six months nor more than twelve months, or a fine of not less than five hundred dollars, or by both a fine of not less than one hundred dollars and imprisonment in the county jail for not less than three months nor more than twelve months.

"10. The court instructs the jury, that, although you may believe from the evidence that the defendant, Heath, did voluntarily engage in the difficulty with

Mosier with intent to kill him or do him some great bodily harm, yet the defendant had the right to abandon the conflict and retire therefrom. And if you believe from the evidence that the defendant in good faith, after so voluntarily entering into the difficulty and before the firing of the fatal shot, with the honest purpose of abandoning further combat with said Mosier did abandon the same and withdraw therefrom as far as he could, or fled, and that said Mosier pursued and pressed hard upon defendant so that it became necessary for him to kill said Mosier to save himself from great bodily harm or from death, then the defendant under such circumstances had the right to defend himself and use such force as was reasonably necessary to protect himself from death or great bodily harm (even to the taking the life of Mosier) and this is true although you may believe from the evidence that the defendant was the aggressor."

"12. You are further instructed, that, if you believe from the evidence that the defendant provoked the difficulty or began the quarrel, with the purpose of taking advantage of the deceased, and of taking his life, or doing him some great bodily harm, then there is no self-defense in the case however imminent the peril of the defendant may have become during the difficulty in consequence of an attack made upon him by the deceased; and if in such circumstances if the jury believe that the defendant shot and killed the deceased, then the defendant is guilty of murder in the first degree, and the jury should so find.

"13. The court instructs the jury, that, if they believe from the evidence that the defendant made any threats against the life of Mosier, then such threats should be considered by the jury in determining whether the defendant was the aggressor, and also for the purpose of showing what the intentions of the defendant were, at the time he entered into the difficulty,

if the jury believe from the evidence that the defendant did enter into the difficulty.

"14. The court instructs the jury, that, if they believe the defendant made any statement or statements in relation to the crime charged in the information, after the crime is alleged to have been committed, the jury must consider such statement or statements all together. The defendant is entitled to the benefit of what he said for himself, if true, and the State is entitled to anything he said against himself in any conversation proved by the State."

The court gave the following instruction at the request of defendant:

"M. The court instructs the jury, that, if Mosier had threatened in the hearing of defendant to cut him, and had a knife in his hand, and the jury so believe from the evidence, then you will take those facts into consideration along with the other facts and circumstances in the case in order to determine which one of them made the first assault with a weapon upon the other, and if that be found to have been by Mosier then you will further consider those facts in like manner in determining whether the defendant had reasonable cause to believe and did believe at the time he shot Mosier that it was necessary to do so to save himself from death or great bodily harm."

And refused the following among other instructions asked by defendant:

"A. The jury are instructed by the court that you shall not permit any sympathy, prejudice or bias, for or against the prosecution or defendant or other person, upon any grounds or from any source whatever, to influence or affect your consideration of the evidence, or your findings, or your verdict in this case. Your verdict must be found according to the evidence given to you here in court and under the law as contained in these instructions from the court."

"H. The court instructs the jury, that, if you believe from the evidence that if the defendant did voluntarily engage in the difficulty with Mosier, yet he had the right to abandon the conflict and retire therefrom, and if it be. found that he did in good faith so attempt to withdraw from said difficulty, but that Mosier pursued and pressed hard on him with knife or stone, so that it became necessary to shoot the said Mosier to save the defendant from great bodily harm or from death, then the defendant had a right to defend himself and to use such force as was reasonably necessary to defend himself from death or great bodily harm, and this is true, even though the defendant was the aggressor.

"I. Manslaughter is the intentional killing of a human being in the heat of passion on a reasonable provocation; without malice or premeditation, as these terms are explained in these instructions, and under circumstances that will not make it justifiable or excusable homicide; and if the jury find and believe that the defendant in a sudden· heat of passion, on a reasonable provocation, intentionally shot and killed the deceased, without malice or premeditation, and not in the necessary defense of his person, then the jury will find him guilty of manslaughter in the fourth degree, and assess his punishment at imprisonment in the pentitentiary for two years, or at imprisonment in the county jail for not less than six nor more than twelve months, or by a fine of not less than five hundred dollars, or by both a fine of not less than one hundred dollars and imprisonment in the county jail not less than three months."

The other instructions given by the court were such as are usually given and are not criticised here.

I. When this case was here on the first appeal this court said: "It is only necessary to suggest as to this proposition that upon a retrial of the case it should

not be overlooked; in order to warrant the giving of the instruction now under consideration, that it is essential that there should be some substantial testimony tending to show that the defendant, after the commencement of the difficulty, in good faith sought to withdraw from it, and unless there is some substantial testimony showing that state of facts the instruction should not be given at all, but should the facts warrant the giving of the instruction now under consideration it should be so modified as to harmonize with the cases herein indicated of State v. Cable, 117 Mo. 385, State v. Lockett, 168 Mo. 480, and other cases cited."

There was no evidence on the last trial of the case tending to show a withdrawal by defendant. There was some evidence as to a retreat by defendant, but not as to a withdrawal. There is a wide difference between a withdrawal and a mere retreat. A retreat may be and often is a continuance of hostilities. A withdrawal is the abandonment of the struggle by one of the parties and such abandonment must be perceived by the other.

Wharton's Crim. Law, vol. 1, sec. 486, says: "But though the defendant may have thus provoked the conflict, yet if he withdraws from it in good faith, and clearly announces his desire for peace, then if he be pursued, his rights of self-defense revive. Of course there must be a real and bona-fide surrender and withdrawal on his part; for if there be not, then he will still continue to be regarded as the aggressor. But if A really and evidently withdraws from the contest, and resorts to a place of security, and B, his antagonist, knowing that he is no longer in danger from A, nevertheless attacks A, then A's rights in self-defense revive."

McClain's Crim. Law, vol. 1, sec. 310, says: "As appears from the preceding section, one who voluntarily enters into a combat, or is the original aggres-

sor, cannot excuse a subsequent homicide committed in consequence thereof on the ground of self-defense, it being his duty to withdraw; but there must be allowed room for repentance and abandonment of the evil and unlawful purpose, and if the defendant, though originally in the wrong, does thus abandon his purpose, he may afterward exercise the right of self-defense. The withdrawal, however, must be in good faith; if the original assailant merely ceases to advance for the purpose of watching his opponent's movements, and without attempting to avoid the encounter, he will not be excused for what he afterwards does on the ground of self-defense; and the fact of change of purpose must be known to the other party."

Supposing the defendant wilfully brought on the contest with felonious intent, then the rights of the person assaulted would be determined by the law laid down by Wharton on Homicide, sec. 304, as follows: "The general rule is that a person free from fault when attacked by another, who manifestly intends by violence to take his life or do him great bodily harm, is not only not obliged to retreat, but may pursue his adversary until he has secured himself from danger; and if he kill him in so doing it is justifiable self-defense. The right to pursue, as well as to omit to retreat, is essential to make perfect and complete the great natural right of self-defense, and its existence must be recognized by the courts in all cases in which the evidence is of a character to make it a legitimate subject of consideration by the jury."

The rights above set out were the rights which Mosier possessed upon being attacked by defendant with felonious design, if he was so attacked.

Two persons cannot each hold one of two incompatible and opposing rights at the same time. If Mosier, on being feloniously attacked by defendant, had the right to pursue the retreating defendant sufficiently to make his (Mosier's) defense good, then defendant did

not have the right during such retreat to defend himself against Mosier by taking Mosier's life.

During that crucial time, Mosier had the right to slay his antagonist, and Heath, on account of his original felonious intent, had no right except to withdraw. It was only by withdrawal that he could be purged of his felonious intent.

In State v. Bailey, 190 Mo. l. c. 286, the following instruction was approved: "The court instructs the jury that if the defendant voluntarily brought on the difficulty with deceased, or voluntarily entered into a difficulty with deceased, with the intention of killing or inflicting upon him some great bodily injury, if he should resist, then the danger in which he found himself, during such difficulty, no matter how great it might be, would not extenuate or mitigate the offense, or reduce its grade at all, and there can be no self-defense in the case."

And that doctrine is recognized by Judge KENNISH in State v. Sharp, 233 Mo. l. c. 292, when he says: "It is not true as asserted in this instruction, that there is no self-defense in a case where a defendant begins a quarrel or voluntarily enters into the same. It is only true where he does so with the view to take advantage of the quarrel thus begun and to slay his adversary, or do him some great bodily harm. Whenever this is his purpose, he loses his right of self-defense, and if forced to slay his adversary, even though to save his own life, his act becomes murder in the first degree and nothing else."

That language does not mean that there is no way open to defendant except to die or be a murderer. But it does mean that the only way of escape is to withdraw in such a way as to let his opponent know that he abandons the conflict. Wharton on Homicide, sec. 336, says: "The true principle is that where a person has been feloniously assaulted, and the felon has desisted from his attempt and taken flight, the right to pursue for

the purpose of private defense ceases as soon as, in the reasonable belief of the assailed person, the danger has ceased to be imminent and impending." And the same author says (sec. 337): "Nor is there an abandonment of the difficulty where there was a continuous fight from the commencement to the finish."

There was nothing to indicate to Mosier that danger from defendant had ceased to be "imminent and impending." The defendant had not clearly indicated to Mosier that he desired to withdraw. If defendant did take a few backward steps, as he says he did, in the face of Mosier's advance with the knife, there was nothing to indicate to Mosier that defendant had any purpose in so doing except to avoid danger from the knife at the time; and Mosier had the right on the facts shown by defendant's testimony, to think that defendant was still seeking a chance to kill him.

It must be borne in mind that the rights of the parties as discussed under this head are those which exist when the accused brings on or voluntarily enters the difficulty with felonious design.

As there was no evidence tending to show a withdrawal, instruction numbered 12 was correct, and instruction numbered 10 was too favorable to defendant, and hence he cannot complain.

II. Instruction I asked by the defendant left it to the jury to say what is a reasonable provocation. The court gave instruction numbered 9, fully covering the question of manslaughter in the fourth degree, and telling them that the "passion" must have been aroused by Mosier's having assaulted or struck defendant with a knife or stone. The given instruction was correct and sufficient and defendant's instruction was not. [State v. Reed, 154 Mo. l. c. 129.]

III. Objection is made to instruction 13 on the subject of threats by defendant. No authority is

shown against .it. It seems to be a clear statement of the law as applied to the evidence, and he who alleges error must show it, which has not been done.

IV. The court instructed the jury that "statements of counsel are not evidence and should not be considered by the jury in arriving at their verdict."

It is now contended that such instruction in effect nullified the testimony of one of defendant's counsel, who testified as a witness in the case, and also destroyed the effect of the argument to the jury by defendant's counsel. All the proceedings in the course of a trial are grounded on the hypothesis that all parties, including the jury, understand ordinary English. The rule that would require an explanation of the language of that instruction would require one explanation upon another until we should have "confusion worse confounded."

V. Instruction A asked by defendant may very well have been given by the court, but it would have been adding one more to a long list of instructions. The jurors, by being accepted on the panel, had been shown to be clear of bias or prejudice in the case. They were during the trial kept from contact with the world except through the testimony in the case. So far as shown no testimony was admitted improperly showing prejudice in the case. So far as sympathy is concerned, the defendant doubtless gained more than he lost by sympathy. The evidence shows that he was forty-eight years old, the father of eleven children, many of whom were small, and several of whom testified in the case. The wife and children were doubtless present in the court room. We are bound to presume that the jury knew that the great burden of suffering and sorrow caused by the conviction would fall upon their innocent heads. No jury, except under a sense of the responsibility of their high office, could have been induced to convict of murder in the first degree in this case, if

they had not believed, beyond a reasonable doubt, that the killing was a deliberate and unprovoked murder. And yet appellant's counsel insist that the jury should have been told that they should not permit sympathy, prejudice or bias to influence them. Such an instruction may be helpful in some cases, but the defendant cannot complain of its refusal in this case.

VI. It was not error to exclude the offered testimony of Martha McGrew as to the particulars of the whipping of defendant's daughter by Mosier on the morning of the killing. That point falls clearly within the ruling of this court on the former appeal, which forbids going into the trial of a collateral issue.

VII. Complaint is made that witness Shira was permitted to testify that he placed himself in the position "that Susie Thomas testified she occupied," and that from that point the scene of the difficulty could not be seen. Whatever error there may have been in that mode of examination was cured by the fact that the witness was fully cross-examined as to the point of his observation.

VIII. Complaint is made of the refusal of defendant's instruction J as follows: "The court instructs the jury that the testimony of Clifford Noel and Dr. J. M. Williams as read to you from the record and deposition containing the same is competent evidence in the case, and you will consider the same as if those witnesses were present and examined here in open court at this trial, as other witnesses under oath."

It is insisted that the refusal of that instruction practically cut out that testimony, or at best left it on the low level of ex parte statement. Such a result certainly did not follow. The jury must be presumed to know that a deposition read on the trial is testimony, and likewise of Noel's testimony from the former bill

of exceptions.   But the assertion that the jury should consider that testimony the same as if the witnesses were present was the statement of an impossibility. The courts fully recognize the advantage or disadvantage of testimony by deposition.   The personal appearance and demeanor of the witness, whether to his credit or otherwise are not seen.   For that reason appellate courts often defer to the findings of fact by trial courts when otherwise they would not.   The instruction was unnecessary, to say the least of it.

There are many other points raised by counsel for appellant, but we find that some of them are opposed to the clearly settled law, and others are attempts to make new distinctions and refinements in the law for which there are no precedents and no apparent reason.

The judgment is affirmed.   *Blair, C.,* having been of counsel, not sitting.

PER CURIAM.—The foregoing opinion of Roy, C., is adopted as the opinion of the court.