STATE of Missouri, Respondent,

v.

Brian Keith DUNLAP, Appellant.

No. 43322.

Missouri Court of Appeals,
Eastern District,
Division Four.

Aug. 4, 1982.

Motion for Rehearing and/or Transfer
Denied Sept. 17, 1982.

Application to Transfer Denied
Oct. 18, 1982.

Shaw, Howlett & Schwartz by James J. Knappenberger, Clayton, for appellant.

John Ashcroft, Atty. Gen. by Kristie Green, Asst. Atty. Gen., Jefferson City, for respondent.

SATZ, Judge.

Defendant, Brian Dunlap, was convicted by a jury in Count I of third degree assault and in Count II of first degree assault. The court sentenced him to concurrent sentences of one year and ten years, respectively. Defendant appeals. We affirm.

On appeal, the defendant contends that the trial court erred by: (1) failing to submit a proper instruction on self-defense; (2) failing to instruct on assault in the third degree under Count II, as a lesser included offense of assault in the first degree; (3) allowing the prosecution to cross-examine the defendant on the extent of his education; and (4) failing to instruct the jury that a fine was within the range of permissible punishment for assault in the third degree, submitted as a lesser included offense under Count I.

Basically, the state's evidence came from three witnesses: Paul Brinson, his step-father Ed Tenny and Mike Brinson, Paul's brother. According to Paul Brinson, shortly before 12:00 a. m. on the night of the incident, he went to sleep in his parents' home located in a subdivision south of Pacific, Missouri. He was asleep with the window open, when he was awakened by loud voices followed by the loud rumble of a car. As the car passed his house, twice, he heard gravel spinning and hitting a vehicle. On the second occasion, he went outside to investigate and determine whether there was any damage to his newly painted van parked near his house. After inspecting the van, Brinson took a stick, about two feet long and an inch in diameter, out of the van. He heard the car approaching again and stood in the middle of the road, stick in hand, apparently, in order to stop the car. The car approached Brinson, paused, then accelerated toward him. To avoid being hit, Brinson jumped into a ditch along side of the road. As he jumped, Brinson struck the fender of the car with his stick. The car left, Brinson went back inside his house, informed his parents about the incident and went to bed.

About a half hour later, Brinson heard the car coming through the subdivision again. He went outside and stood in the middle of the road with his stick in hand. Once again, the car accelerated towards Brinson. To avoid being hit, Brinson jumped into the ditch, but, as he did, he threw his stick at the approaching car. The car proceeded down the road, then stopped. Brinson got up and started to approach the

car. At that time, the defendant got out of the car "with some kind of object in his hand," later determined to be a baseball bat, and threatened Brinson by stating "I'm going to kill you." The defendant came toward Brinson, hit him with the bat and knocked him down. Brinson remembers being hit at least three or four times.

Paul Brinson's step-father, Ed Tenny, hearing Paul leave the house the second time, went outside also and watched the incident develop from the front of his house. When he saw Paul being beaten, lying on the ground, not defending himself and heard the threat "I'm going to kill you," he grabbed a stick, like a mop handle, went to the scene of the beating and hit the defendant in the back with the stick. The defendant fell down, rolled over, stood up and hit Tenny in the back of the head with the bat.

Finally, Michael Brinson, Paul's brother, came from the house and convinced the defendant to leave. Paul Brinson was hospitalized for his injuries, received twenty stitches on his forehead and spent four days in intensive care.

Defendant's version of the incident was quite different than the state's version. According to defendant's evidence, a Mike Clark had been visiting his girl friend the night of the incident. Mike and his girl quarreled, and, after leaving his girl friend, Mike drove through the subdivision two or three times apparently to attract her attention. On the last drive through, Paul Brinson approached Clark's car from the passenger's side and, without warning, dented the fender of Clark's car by hitting the fender with what appeared to be an axe handle. Clark left the subdivision, drove to Pacific and picked up defendant and a Wayne

Brooks. The three then drove back to the subdivision. As they drove past the Brinson home, Paul Brinson leaped from the side of the road and shattered the car's windshield by hitting it with an axe handle. The car pulled over to the side of the road and defendant and Mike Clark got out of the car. Paul Brinson then came running toward defendant, with what appeared to be an axe handle and shouted at defendant to get back in the car and "get out of here before I knock your head off with this axe handle." Defendant grabbed a baseball bat out of the car to defend himself. Brinson hit defendant first with the axe handle and knocked him off balance. Defendant then countered by hitting Brinson with the bat. Brinson went down, and defendant told him "don't get back up." However, Brinson did get back up, swung again at defendant, defendant knocked him down again. This process occurred once more. At that point, Ed Tenny came from behind defendant and knocked defendant down by striking him in the back with a "big stick." Defendant recovered, pursued Tenny and struck Tenny with his fists. Tenny than ran off. Defendant, Wayne Brooks and Mike Clark then left in Clark's car and went back to town.

On this evidence, the jury convicted defendant, on Count I, of an assault in the third degree on Ed Tenny and, on Count II, of an assault in the first degree on Paul Brinson.

■ Defendant's first allegation of error is that the trial court failed to give a "withdrawal" or "retreat" instruction along with one of the self-defense instructions. The self-defense instruction in question was patterned after MAI–CR2d 2.41.1[1] and was

---

1. Instruction 13 reads in part:
   "One of the issues as to Count II is whether the use of physical force against Paul Brinson was justifiable. The use of physical force (including the use of deadly force) is justifiable if used in lawful self-defense. On that issue you are instructed as follows:
   1. The state has the burden of proving beyond a reasonable doubt that the defendant did not act in lawful self-defense. If the evidence in this case leaves in your mind a reasonable doubt as to whether the defendant acted in lawful self-defense in using physical force against Paul Brinson, you must find the defendant not guilty under Count II.
   2. If the defendant was not the initial aggressor in the encounter with Paul Brinson and if the defendant reasonably believed it was necessary to use deadly force to protect himself against what he reasonably believed to be the use of unlawful force putting himself in an imminent danger of death or seri-

submitted as defendant's defense to the charge of his assault on Paul Brinson. Defendant claims that when he struck Paul Brinson and knocked him down, he told Brinson not to get back up. This testimony, according to defendant, was evidence of his withdrawal from the fight and obligated the trial court to give paragraph 3 of MAI–CR2d 2.41.1, which is a withdrawal instruction.[2] We disagree.

■ In self defense, a withdrawal is the abandonment of the struggle by one of the parties. *State v. Mayberry,* 360 Mo. 35, 226 S.W.2d 725, 727 (1950). To be a withdrawal, "there must be substantial evidence showing an abandonment of the struggle by the defendant operating as a clear announcement of his desire for peace; and [these facts] must be perceived by or made known to his adversary." *State v. Gadwood,* 342 Mo. 466, 116 S.W.2d 42, 57 (1937). The withdrawal must be made in good faith and not be a retreat which may be simply a continuance of hostilities. *See State v. Mayberry, supra* 226 S.W.2d at 727; *State v. Heath,* 237 Mo. 255, 141 S.W. 26, 29 (1911).

■ Here, defendant testified that he hit Paul Brinson in the head with a baseball bat, and, while Brinson was on the ground, he told Brinson "don't get back up." Defendant stood over Brinson, after Brinson went down. Defendant did not physically withdraw, retreat or leave the scene of the altercation. Nor were his words "don't get back up" a clear announcement of his desire for peace. Rather, they were an implied threat of a conditional assault. Defendant's actions and words compel the inference that he was ready and willing to continue the fight. Thus, the court's failure to give paragraph 3 of MAI–CR2d 2.41.4 was not error.

■ Defendant also argues that the court should not have included the phrase in the self-defense instruction which reads: "If the defendant was not the initial aggressor . . . ." Defendant claims there was substantial evidence that he was not the initial aggressor and, therefore, the noted phrase should have been omitted from the instruction. We disagree.

Note 5 under Notes on Use pertaining to MAI–CR2d 2.41.1 states that "[i]f there is no evidence indicating the defendant was the initial aggressor or provoked the incident, then the phrase . . . referring to the defendant being the initial aggressor will be omitted." But, "[i]f there is evidence of the defendant being the initial aggressor, then the phrase will be used." Contrary to defendant's contention, whether or not there is *substantial* evidence that he was not the initial aggressor is immaterial. All that is necessary is that there be evidence of the defendant as the initial aggressor. Here, Paul Brinson and his step-father, Ed Tenny, testified that the defendant emerged from the car, threatened to kill Brinson, and then attacked Brinson with a baseball bat. Clearly, this is evidence that defendant was the initial aggressor. As such, the instruction referring to the defendant as the initial aggressor was properly submitted.

■ Defendant next asserts the court erred in failing to give an instruction on assault in the third degree as a lesser included offense of the assault on Paul Brinson. The defendant argues that evidence of self-defense mandates an instruction for assault in the third degree. We disagree.

In an assault case, the trial court is not required to submit an instruction on a lesser

---

ous physical injury at the hands of Paul Brinson, then the defendant acted in lawful self-defense and must be acquitted."

2. Paragraph 3 of MAI–CR2d 2.41.1 states:
    "Even if the defendant was the initial aggressor with [name of victim], nevertheless (if defendant in good faith withdrew from the initial encounter and clearly indicated to [name of victim] his desire to withdraw and

end the use of force, and if [name of victim] persisted in continuing the incident by the use of threatened use of force) or (if the initial aggression was justified [name of other justification such as 'to make an arrest' or 'in lawful defense of property'] as submitted in Instruction Number ___), and [insert one of the following, omitting the letter and brackets] . . . ."

included offense where the evidence fails to support such a submission. *State v. Howell,* 524 S.W.2d 11, 21 (Mo. banc 1975); *State v. Brandon,* 606 S.W.2d 784, 787 (Mo. App.1980). Moreover, the trial court is not obligated to give an instruction on a lesser included offense "unless there is a basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense." § 556.046.2 RSMo 1978. Stated otherwise, a lesser offense should be instructed on only when the facts in evidence "are sufficient to arguably show a lack of an essential element of the higher degree of the offense." *State v. Howell, supra* at 21. In the present case, the trial court instructed on first degree and second degree assault under Count II, the assault on Paul Brinson. An instruction on assault in the third degree would be warranted only if the facts in evidence are sufficient to show the lack of an essential element of assault in the second degree, forming a basis to acquit defendant of assault in the second degree and to convict him of assault in the third degree.

▮ The essential elements of assault in the second degree are (1) knowingly or recklessly (2) causing serious physical injury to another person (3) by means of a deadly weapon or dangerous instrument. § 565.-060 RSMo 1978. A person acts "knowingly," (1) with respect to his conduct, when he is aware of the nature of his conduct; or "(2) with respect to a result of his conduct when he is aware that his conduct is practically certain to cause that result." § 562.-016.3 RSMo 1978. Taking defendant's evidence as true, he struck Paul Brinson and did, in fact, hit him and cause him injury. Thus, the defendant acted "knowingly," since he was "aware of the nature of his conduct," and was "aware that his conduct was practically certain to cause" injury to Paul Brinson. Finally, defendant used a

dangerous instrument, a baseball bat, to accomplish his objective.[3] Taking defendant's testimony as true, his acts, at the very least, constituted assault in the second degree or self-defense. There were no facts in evidence which could arguably show the lack of an essential element of assault in the second degree; nor did the facts form a basis to acquit the defendant of second degree assault and convict him of third degree assault. Defendant's evidence of self-defense does not warrant an instruction on assault in the third degree. The defendant was either guilty, at least, of assault in the second degree or not guilty by reason of self-defense. *State v. Brandon, supra* at 787. Therefore, the trial court did not err in failing to instruct the jury on assault in the third degree.

▮ Defendant makes another argument against the lack of an instruction on assault in the third degree. This argument is neither clear nor explicit. Apparently, defendant argues that a third degree assault instruction should have been given because there was evidence of consent. However, in limited circumstances, consent is a "defense" to any degree of assault. See, for example, Note 7, MAI–CR2d 19.02 (assault in the first degree); Note 4, MAI–CR2d 19.04.2 (assault in the second degree); Note 5, MAI–CR2d 19.06.1 (assault in the third degree). Thus, consent is not the reason for giving a particular assault instruction; rather, it is a defense to those instructions.[4]

▮ Defendant next complains the trial court erred in permitting the prosecution to cross-examine him about the extent of his education. Specifically, defendant complains about the following inquiry:

"Q. And where do you [defendant] go to school?

A. I don't go to school.

Q. How far did you go in school?

---

**3.** A dangerous instrument is any instrument which, under the circumstances it is used, is readily capable of causing serious physical injury. § 556.061(7) RSMo 1978.

**4.** Defendant may be arguing that an instruction on consent should have been included in all the

assault instructions. However, a self-defense instruction was given to each assault and defendant does not demonstrate why the evidence commanded an additional instruction on consent.

A.  I think—

> [Defense Counsel]:  Judge, I would object to the relevancy of the question.
>
> [Prosecutor]:  Your Honor, I believe the background of the defendant is something the jury ought to know with regard to truth and veracity.
>
> THE COURT:  No, overruled.  Overruled.
>
> Witness:  I went to the second day of the tenth grade."

Defendant complains that this inquiry was irrelevant, inflamed the jury and, thus, denied him a fair trial.  We disagree.

In Missouri, counsel is afforded wide latitude in cross-examination.  Inquiry into a witness' residence, antecedents, history and occupation are proper where they logically relate to the witness' credibility.  *State v. Swisher,* 364 Mo. 157, 260 S.W.2d 6, 12 (1945).  With commendable effort, the state attempts to establish the propriety of this line of questioning as an attack on defendant's credibility.  The state's effort, however, is not persuasive.  History, replete with mountebanks of high intelligence and advanced formal education, demonstrates there is no logical nexus between credibility and formal education.  Thus, the inquiry into defendant's education was error.  However, we do not believe it was prejudicial error.  From the record, it appears this was the only reference to defendant's education.  It was not highlighted by related questions or arguments of counsel.  Defendant is guaranteed a fair trial not a perfect one.  *State v. Keeble,* 427 S.W.2d 404 (Mo.1968).  We do not find this single reference to defendant's education worked any prejudice against defendant.

■  Defendant's final point is that the trial court erred (1) by submitting MAI–CR2d 2.60[5] to the jury, and (2) by failing to instruct the jury that it could assess a fine in lieu of imprisonment under Count I.  Defendant failed to make these objections during the instruction conference and failed to assert them as error in his motion for new trial.  Thus, he failed to preserve this point for review.  Therefore, we will reverse the judgment only if the action of the trial court constituted manifest injustice or miscarriage of justice.  Rule 29.12(b).

■  Contrary to defendant's first assertion, the record shows that the trial court did *not* submit MAI–CR2d 2.60 to the jury.  Therefore, the defendant's arguments relating to the trial court's error in submitting MAI–CR2d 2.60 are irrelevant.  Furthermore, whether the failure to submit MAI–CR2d 2.60 is plain error was resolved in *State v. Moland,* 626 S.W.2d 368 (Mo.1982).  In *Moland,* the Court concluded that the failure to give MAI–CR2d 2.60 did not result in manifest injustice or miscarriage of justice.  The Court stated that although MAI–CR2d 2.60 is a mandatory instruction, the failure to give it would not result in jury misdirection because the instruction is advisory rather than directory, and does not "empower the jury to assess a lesser punishment than the verdict directing instruction."  *Id.* at 370.  Thus, the court's failure to give MAI–CR2d 2.60 in the present case did not constitute plain error.

■  The defendant also charges the trial court with error for failing to instruct the jury in the verdict directing instruction that imposition of a fine in addition to or in lieu of confinement was within the range of punishment under Count I.  § 557.036.2 RSMo 1978 requires the trial court to instruct the jury on the range of punishment authorized by statute.  The defendant contends that had the jury been instructed on the full range of punishment, it might have

---

**5.**  MAI–CR2d 2.60 states:

> "You are further instructed that if you find the defendant guilty (under Count ——) of [name of offense] as submitted in Instruction No. ——, the court may, under the law, sentence the defendant to either:
>
> 1.  Imprisonment for a term fixed by the court, but not to exceed the term assessed and declared by the jury in its verdict, or

> 2.  The payment of a fine, the amount of which would be determined by the court in accordance with applicable statutes, or
>
> 3.  Both such imprisonment and the payment of such a fine.
>
> In your deliberations your duty is to determine whether the defendant is guilty or innocent, and, if you find him guilty, to assess and declare the punishment as directed in other instructions given to you."

assessed a fine without a term of imprisonment.

This precise issue was considered and rejected in *State v. Van Horn,* 625 S.W.2d 874 (Mo.1981). The Court stated although § 557.036.2 requires the jury to assess and declare punishment, it refers only to the punishment which the jury is authorized by statute to determine and declare. Because the trial court, and not the jury, has the option of imposing a fine in addition to or in lieu of a term of imprisonment, it is not necessary to instruct the jury that it could recommend a fine. *Id.* at 877; *State v. Shepherd,* 633 S.W.2d 206, 208 (Mo.App. 1982).[6] Therefore, the trial court did not commit plain error by failing to instruct the jury that it could recommend a fine.

Judgment is affirmed.

SMITH, P. J., and PUDLOWSKI, J., concur.

6. As pointed out in *State v. Shepherd, supra* at 208, Fn. 2:

"In *Van Horn* the court noted that '[t]he provisions in § 557.036 that the court shall instruct the jury as to the "range of punishment" and that the jury shall "assess and declare the punishment ... are in conflict,"' but said that it was obvious the legislature intended the court to have the option to substitute its judgment for the jury's 'recommendation'. Recognizing this conflict, the court proposed a modification of MAI–CR2d 2.60 which it suggested should be used until the patterned instruction was modified. 625 S.W.2d at 877–878."