**STATE of Missouri, Respondent,**

v.

**Levon KIRKLAND, Appellant.**

**No. 56218.**

Supreme Court of Missouri,
Division No. 1.

Oct. 11, 1971.

John C. Danforth, Atty. Gen., G. Michael O'Neal, Asst. Atty. Gen., Jefferson City, for respondent.

Samuel T. Vandover, Asst. Public Defender, Clayton, for appellant.

BARDGETT, Judge.

Defendant Levon Kirkland was found guilty by a jury of robbery in the first de-

gree by means of a dangerous and deadly weapon and the jury assessed punishment at five years. Judgment and sentence were entered thereon and defendant appeals.

The sufficiency of the evidence is not challenged. The issue dispositive of this appeal concerns the admission into evidence of certain hearsay testimony tending to identify defendant as one of the robbers.

The victim of the robbery, Robert McGuire, a cab driver for Suburban Cab Company in St. Louis County, testified that on December 23, 1969, about 10 p. m., he picked up a person, who he later identified as the defendant, and a female later identified as Pamela Reynolds, at 6211 Ella, Wellston, Missouri, and drove them to 1911 Arlington in St. Louis where defendant got out and went into the house to get money for the cab fare. He returned in a few minutes accompanied by another Negro male later identified as Davis. Defendant paid the fare. Both men got into the cab with Pamela. McGuire did not know any of these people. Davis told McGuire to drive them to Kinloch. When they arrived in Kinloch, Davis put a gun to McGuire's head, ordered him to stop and get out. McGuire complied and while Davis held the gun on McGuire the other man, allegedly the defendant, went through McGuire's pockets and took his wallet containing about $55, some change and keys. Davis told McGuire to walk across a field and, as McGuire did so, Davis shot him in the leg. Defendant, Davis and Pamela left the scene on foot. McGuire got a look at defendant's face on several occasions in the cab and just before defendant went through McGuire's pockets.

After reporting the robbery to his dispatcher and going into the cab office for a few minutes, McGuire went to the Kinloch police department and gave a description of his assailants. He described Kirkland, whose name was then unknown, as being a Negro, short, wearing a dark car coat, bushy-haired, rather young—20 or 21; Davis, name then unknown, as being some-

what taller, a Negro, and wearing a brown overcoat; and he also gave a description of the girl. McGuire then left the police station, received treatment for his leg, went home, and returned to the Kinloch police station a few hours later as a result of receiving a phone call from the police about 1:30 or 2 a. m.

The cross-examination of McGuire was principally directed at attempting to disparage McGuire's identification of defendant Levon Kirkland as being the same man who participated in the robbery.

Officer George Jones of the Kinloch police department testified that he received the report from McGuire. His direct examination continued as follows:

"Q After receiving the report from Mr. McGuire what, if anything, did you do? A I went down to Mr. Simmons' house and found out a phone number, then came back and made a call. Q What number did you call? A I don't recall the number, but I know the person. Q Who was that person? A Miss Mayo. Q Mrs. Mayo? A Yes. Q Did you have a conversation with her at that time? A Yes. Q What did you ask her? A I asked her who called a cab and got in and left in a cab. Q What did she reply to you?

"MR. VANDOVER: I object to that as calling for hearsay.

"MR. HARTENBACH: I'm not asking this question—the answer is not for the truth of the matter stated but merely to determine that it was said and that this police officer relied on it.

"MR. VANDOVER: I think the best evidence would be Mrs. Mayo's testimony.

"MR. HARTENBACH: The best evidence rule does not apply to testimony of witnesses but only to documents.

"MR. VANDOVER: This is gross hearsay. She's apparently available.

"THE COURT: (To Reporter): Will you read the last questions?

"(Reporter reads: * * *.)

"THE COURT: Overrule the objection with the cautionary statement to the jury that I'm admitting this testimony as to what she replied not to prove what she said was true but in order to present some evidence for the jury's evaluation as to what was told to this witness and upon which I am given to understand by the prosecuting attorney that this witness did rely.

"MR. HARTENBACH: Q What did she reply to your question? A She says that Pamela Reynolds and Pete Kirkland got into the cab and left. Q Did she tell you approximately what time that was? A I really don't remember exactly what time it was. Q After your conversation with Mrs. Mayo did you remain at the police station? A No; she told me where she lived at. Q You say you did not remain at the police station. Where did you go? A To Pamela's house."

Officers Forrest and Clark accompanied officer Jones to Pamela's house. Officer Forrest testified they went to Pamela's house looking for Levon Kirkland, found him there and arrested him. Kirkland and Pamela were then brought to the Kinloch police station where they were identified by McGuire.

Defendant offered no evidence at trial. The principal question for the jury was one of identification—was defendant one of the two men in the cab who robbed McGuire?

No other person in the case identified the persons by name who allegedly called for, got into, and left in McGuire's cab except "Mrs. Mayo" through the testimony of officer Jones. When Jones's testimony as to what Mrs. Mayo told him is considered with the context of McGuire's testimony, then it becomes apparent that if the statements attributal to Mrs. Mayo are true, then Kirkland was the man who participated in the robbery and Mrs. Mayo's statements are powerful corroborating evidence

of identification. If Mrs. Mayo's statements are incorrect, then it is equally obvious that defendant is probably not one of the men who robbed McGuire. The source of the information—the person on whose credit the assertion that Kirkland and Pamela got into the cab depends—was Mrs. Mayo. She did not testify and therefore was not subject to the test of cross-examination.

■ The essential principle of the hearsay rule is to secure trustworthiness of testimonial assertions by affording the opportunity to test the credit of the witness, and it is for this reason that such assertions are to be made in court subject to cross-examination. State v. Chernick, Mo., 278 S.W.2d 741, 748[5, 6]. Wigmore on Evidence, Third Edition, Vol. V, § 1362, p. 3, puts it as follows: "The fundamental test, shown by experience to be invaluable, is the test of *Cross-examination*. The rule, to be sure, calls for two elements, Cross-examination proper, and Confrontation; but the former is the essential and indispensable feature, the latter is only subordinate and dispensable. * * * The theory of the Hearsay rule is that the many possible deficiencies, suppressions, sources of error and untrustworthiness, which lie underneath the bare untested assertion of a witness, may be best brought to light and exposed by the test of Cross-examination. * * * It is here sufficient to note that the Hearsay rule, as accepted in our law, signifies *a rule rejecting assertions, offered testimonially, which have not been in some way subjected to the test of Cross-examination:*"

State v. Chernick, Mo., 278 S.W.2d 741 (assault with intent to kill with malice), and State v. Chernick, Mo., 280 S.W.2d 56 (robbery in the first degree with a dangerous and deadly weapon) are analogous. In both cases this court held that the state made a prima facie case but reversed and remanded because of the erroneous introduction into evidence of certain hearsay testimony. There the circuit attorney was allowed to testify that immediately after he

questioned one Scholl, a participant in the crimes, he directed the issuance of an arrest order for Chernick, all over defendant's objection of hearsay. This court ruled that: "The subsequent statements of Scholl to the Circuit Attorney were hearsay and inadmissible as evidence of the fact asserted. The conduct, in itself, of the Circuit Attorney in putting out an immediate arrest order was not material or relevant to any issue of the case, so the fact that Scholl made a statement was not admissible as tending to explain the conduct of the Circuit Attorney. * * * It would seem clear that the same considerations which would have invoked the rule excluding the actual assertions of Scholl would forbid that any inference against defendant should be drawn from the conduct of the Circuit Attorney actuated by what Scholl said." 278 S.W.2d at 747–748.

In the case at bar, officer Jones was permitted to testify to the actual assertions of Mrs. Mayo. The evidence was recognized by the trial court as hearsay but at the urging of the prosecuting attorney the testimony was allowed on the theory that it was not offered for the truth of the matter stated but merely to determine that it was said and that officer Jones relied on it, and the court so cautioned the jury. Although the state has not pointed out what actions of officer Jones were based on the telephone conversation with Mrs. Mayo, the chronological order of events was that the next thing that Jones did was to go to Pamela Reynolds' house where defendant was found and arrest him. This was certainly good police work; however, neither the *fact* that Mrs. Mayo made the statement to Jones, nor whether he was justified in relying on it, was material or relevant to any issue before the jury. Such matters may have been material to the question of probable cause for arrest which was the subject of pretrial motions to suppress. These had been ruled on by the court and questions concerning the lawfulness of the arrest went out of the case except for appellate review, if preserved. State v.

Tillman, Mo., 454 S.W.2d 923, 926[5, 6]; State v. Holbert, Mo., 416 S.W.2d 129, 133 [8]. In short, officer Jones's state of mind was not material nor relevant to any issue in the case before the jury.

The state has not directed our attention to nor can we discern any legitimate jury issue upon which the questioned evidence would have any bearing except the issue of whether or not the defendant did, in truth and fact, board McGuire's cab, as Mrs. Mayo allegedly asserts, and participate in the robbery of McGuire. As to this issue, the truth of the matter asserted is of prime importance and defendant was entitled to cross-examine the person upon whose credit the matter was asserted as being the truth, to wit, Mrs. Mayo. Cross-examination of officer Jones on whether, in fact, Mrs. Mayo made the statements would not suffice as a substitute for cross-examination of Mrs. Mayo to test the truth of the statements. Defendant was denied the right of cross-examination secured by the confrontation clause of the Constitution of Missouri 1945, Art. I, § 18(a), V.A.M.S. State v. Newell, Mo., 462 S.W.2d 794, 796 [1]. The admission of the questioned hearsay constituted prejudicial error.

Respondent cites State v. Hale, Mo., 371 S.W.2d 249, State v. Williams, Mo., 448 S.W.2d 865, Bond v. Wabash R. Co., Mo., 363 S.W.2d 1, 5[3, 4], Mash v. Mo. Pac. R. Co., Mo., 341 S.W.2d 822, State v. Barnes, Mo., 345 S.W.2d 130, State v. Sarkis, Mo., 313 S.W.2d 723, and Nash v. United States, 405 F.2d 1047 (8 Cir. 1969).

Bond v. Wabash, supra, was a suit for false imprisonment and malicious prosecution. Mash v. Mo. Pac. R. Co., supra, was a wrongful discharge. The question of reasonableness of the defendants' acts were issues in both cases. The reasonableness of officer Jones's acts were not an issue before the jury here.

In State v. Hale, supra, one officer testified that another officer told defendant that an account given by defendant was impossible. After this defendant changed his

story and the second account was admitted against defendant, this court said the comment of impossibility was not admitted as evidence of the truth of the fact asserted—impossibility—but merely to establish that it was said. We also note that the testimony complained of in State v. Hale, supra, did not tend to incriminate the defendant whereas here the questioned testimony goes directly to the issue of identification and consequently to the issue of guilt.

In State v. Williams, supra, the complained of testimony was merely cumulative to that of two other witnesses and injected no new fact into the case. Here the hearsay was not merely cumulative and did inject new and important facts into the case.

In State v. Sarkis, supra, 313 S.W.2d loc. cit. 726, this court said the testimony complained of as being hearsay "tended to show defendant's mental attitude, intent and motive for the offense on trial * * *." The distinction is apparent.

In State v. Barnes and Nash v. United States, supra, the questioned evidence did not identify the defendant as the one who committed the offense. Here that is the only jury issue that the hearsay evidence would have any bearing on.

As stated, the admission of the hearsay testimony of officer Jones constituted prejudicial error. The caution the court gave the jury that the evidence was not being admitted for the truth of the statement "but in order to present some evidence for the jury's evaluation as to what was told to this witness" would leave the impression that there was an issue in the case for the jury to determine upon which their evaluation of the questioned testimony would have some bearing. There was no jury issue in this case upon which the questioned testimony had any probative value except, as stated, the issue of identification, and as to this issue, the testimony was incompetent.

Defendant also contends that he was not subject to being cross-examined as to whether he had been previously convicted of the criminal offense of stealing over $50 by trick and deceit because the information upon which he claims the record of conviction is based did not charge him with stealing over $50 but rather charged him with stealing under $50, to wit, $35. The record, as it stands before us, reflects that defendant pleaded guilty to the higher offense of stealing over $50 on an information charging the lower offense of stealing under $50. Defendant claims the conviction is a nullity, citing Montgomery v. State, Mo., 454 S.W.2d 571. Defendant claims he did not testify in this case because the trial court ruled that the conviction could be used for impeachment purposes. The state contends that defendant was not entitled to object to the use of the alleged prior conviction asserting that the only method available to defendant to question the prior conviction was by writ of error coram nobis, since the prior sentence had been completed.

We will not, on the record before us, finally determine whether the prior conviction is admissible for impeachment purposes as the case is being remanded and further evidence bearing on the question may be forthcoming or the issue may not arise again. We have set forth the foregoing, however, in order to make clear that when and if the prior conviction is offered in evidence and objected to, the court must rule on the objection, and, if the records reflect the conviction to have been a nullity, then the evidence of the prior conviction must be rejected even though the prior record of conviction has not previously been attacked in a prior proceeding under rule 27.26, V.A.M.R., habeas corpus, or writ of error coram nobis. See: State v. Frey, Mo., 459 S.W.2d 359.

The judgment is reversed and the cause is remanded for new trial.

SEILER, J., concurs.

HOLMAN, P. J., concurs in result.