STATE of Missouri, Plaintiff-Respondent,

v.

Rodney Earl HARRIS, Defendant-Appellant.

No. 36560.

Missouri Court of Appeals, St. Louis District, Division Three.

March 16, 1976.

David V. Uthoff, St. Louis, for defendant-appellant.

John C. Danforth, Atty. Gen., Preston Dean, Nanette Laughrey, Asst. Atty. Gen., Jefferson City, Brendan Ryan, Circuit Atty., Nels C. Moss, Jr., Asst. Circuit Atty., St. Louis, for plaintiff-respondent.

SIMEONE, Presiding Judge.

Defendant-appellant, Rodney Earl Harris, was charged, tried and found guilty by a jury for the offense of murder in the second degree. § 559.020, RSMo 1969. He was sentenced under the Second Offender Act, § 556.280, by the court to fifty years in the department of corrections. He appeals. We affirm.

Since the appellant does not question the sufficiency of the evidence, we will state only those facts necessary for the disposition of the points raised on appeal.

A jury could reasonably find the following: William J. Kupfer, Jr., a man of approximately 60 years of age, lived in the City of St. Louis. On the evening of June 18, 1973, his son, William J. Kupfer, III, who lived with his father, left the family home about 6:45 p. m., to attend a church meeting. When he returned at about 11:45 p. m., he found the house ransacked and saw his father "lying on the living room floor." He "was strewn out on the floor, which would be unusual, just on the living room floor." Mr. Kupfer, III called the police. The police came. Upon examination, it was found that there were several items missing from the house—radios, a cassette tape player, cameras, a diamond ring and some cash. When the police arrived, they found that Mr. Kupfer, Jr. had been shot six times and was apparently dead.

Patrolman Lawrence Keating was one of the policemen who arrived at the Kupfer home. He found the premises "pretty well disarranged." He contacted the homicide division and the evidence technician unit.

Officers from the evidence technician unit also came to the home and examined the room. They seized four pellets from the living room area and seven shell casings and made a fingerprint examination of the living room and bedroom area. They found a "Delco Remy battery switch box," sometimes referred to as a coin box or container, in the home, and it was dusted for fingerprints. Two whole and other pieces of fingerprints were found thereon. These impressions were forwarded to the laboratory. They also found shell casings and pellets and took photographs. The victim was taken to the hospital. He was dead on arrival.

The next morning, Dr. John J. Thomas performed an autopsy. He found several gunshot wounds in: (1) the left shoulder, (2) the left side of the chest, (3) the left side of the abdomen three inches from the left iliac spine, (4) the middle of the right arm, (5) the middle third of the right thigh, and found (6) a penetrating wound on the right side of the chest. Death was caused by "traumatic intrathoracic hemorrhage" due to a penetrating gunshot wound of the "thoracic aorta." "In other words, the cause of death was the massive bleeding." Dr. Thomas recovered three bullets from the body which were turned over to the police.

On June 21, 1973, Officer Donald Ray was in the vicinity of University Avenue in the City of St. Louis and observed a 1968 Oldsmobile. He was asked on direct examination whether "[p]rior to observing that vehicle had you received any radio communication concerning a vehicle of that description?" An objection was made on the ground that ". . . he received some information by radio that implicated this defendant to this crime, and so it's hearsay, your Honor. . . ." The objection was overruled. Defense counsel argued that the officer is "leaving with the jury the impression that there is some evidence not introduced in this cause that caused a radio description to go out for this car in which this defendant was found. . . ." After observing the Oldsmobile, Officer Ray summoned two other officers-Officers Dobbins and Mitchell. Officer Dobbins testified that after he "talked" to Officer Ray, he observed the vehicle. Again, objection was made that "[i]t's a clear indication that something was said to this officer [Dobbins] by Ray that implicated this defendant and gave this officer reason to arrest him and stop that car. You can't do that, that's hearsay, your Honor." The court overruled the objection and a motion for mistrial. Officer Dobbins then testified that he and his partner, Mitchell, observed this car, which at the time had no passengers, and they waited for occupants to enter. Eventually, an automobile pulled up alongside the Oldsmobile, and three "fellows" got out, entered the Oldsmobile and started to drive off. As they did so, Officers Dobbins and Mitchell "pulled up alongside," and the car pulled to the curb. Appellant was in the Oldsmobile with two other persons who were known to the officers. The three men got out of the Oldsmobile, and the appellant, Harris, walked away to a grassy area by the sidewalk, where he removed a pistol from beneath his shirt and laid it in the grass. Officer Dobbins walked over, picked up the pistol and said, " ' . . . he's under arrest for CCW.' " Mr. Harris then ran through the areaway. He was not apprehended at this time, but the gun and bullets were seized. The gun was a .32 automatic weapon. Officer Mitchell corroborated Officer Dobbins' testimony regarding the event. Later that same day, appellant-Harris was arrested at his home "upstairs above the liquor store." Officer Mitchell went to the liquor store, identified himself as an officer and talked to the mother of Mr. Harris. Mitchell went upstairs and found "Rodney climbing out of the back room," "attempting to go out the window." Harris was ordered back, and the officer took him into custody.

On August 29, 1973, the appellant was charged by a substitute information in lieu of an indictment with second degree murder. Trial began on July 8, 1974.

During the trial, the above facts were brought out. In addition, the commander of the police laboratory and a firearms ex-

148

aminer, Lieutenant William Armstrong, examined and test-fired the firearm seized by Officer Dobbins and examined the bullets recovered from Mr. Kupfer's body. He performed a microscopic comparison of the test shot and the bullets removed from the victim. "The microscopic examination proved beyond any doubt that the two pellets . . . removed from Mr. Kupfer were definitely fired from this .32 caliber automatic." Lieutenant Armstrong had no question in his mind that "this gun was used in the killing of that man."

A fingerprint expert, Officer Paul English, testified at trial. He testified that he compared the latent fingerprints turned over to the division by the officer who took the prints from the "coin box" or "container" with the fingerprints of Mr. Harris and "found that the impressions made by the left thumb, left middle and left ring fingers of Rodney Harris matched the impressions on the container." He testified that if prints were on the container over a "week" it would be "very unusual." At the close of the evidence, defendant moved for a judgment of acquittal which was overruled. The court instructed the jury on second degree murder. MAI–CR 6.06.[1] The defendant offered an instruction on manslaughter, but the offer was refused. After the jury was instructed, counsel argued the case. During the state's opening argument, the prosecutor reviewed the evidence, and, after reviewing much of the evidence, the following occurred:

"[Prosecutor:] . . .

Now, we have gone through the whole process of a jury trial, a grand jury indictment. The grand jury indicted this man and said it's murder second degree.

[Defense counsel]: I'll object, your Honor.

THE COURT: Sustained. Ordered stricken. The jury is instructed to disregard it.

[Defense counsel]: I ask a mistrial be declared.

THE COURT: Overruled.

[Prosecutor]: I didn't indict this man. . . ."

The jury found the appellant guilty of murder in the second degree. In due time a motion for new trial was made complaining of the testimony of Officers Ray and Dobbins, the argument of the prosecutor and that "[t]he Court erred in refusing to give defendant's instruction A on the lesser offense of Manslaughter."

The motion was overruled, and on October 4, 1974, the defendant, having been granted allocution, was sentenced to fifty years in the department of corrections.

On this appeal, appellant makes three points. He contends that the trial court erred (1) in overruling his objections to the testimony of Officers Ray and Dobbins "for the reason that the testimony introduced a distinct inference of defendant's guilt based solely upon hearsay . . ." so that the defendant was prejudiced; (2) in refusing to give an instruction for manslaughter "for the reason that if the state had made a submissible case on murder second degree, it then became an issue for the jury to decide if the defendant was guilty of manslaughter"; and (3) "in overruling the appellant's request for a mistrial when the state informed the jury that evidence reflecting against the appellant had been presented to the grand jury, resulting in the return of an indictment, for the reason that such argument and conduct on the part of the state [sic] attorney charged the trial atmosphere with prejudice and the jury could no longer deliberate dispassionately."

1. INSTRUCTION NO. 4:
    "If you find and believe from the evidence beyond a reasonable doubt:
    First, that on June 18, 1973, in the City of St. Louis, State of Missouri, the defendant caused the death of William Kupfer, Jr. by shooting him, and
    Second, that the defendant intended to take the life of William Kupfer, Jr.,

then you will find the defendant guilty of murder in the second degree.
    However, if you do not find and believe from the evidence beyond a reasonable doubt each and all of the foregoing, then you must find the defendant not guilty of that offense."

As to his first point, appellant argues that the basic principle of the rule against hearsay is that in order to insure the truthfulness of testimonial assertions, such assertions are to be made in court and subject to cross-examination. He relies on *State v. Chernick*, 278 S.W.2d 741 (Mo.1955); *State v. Chernick*, 280 S.W.2d 56 (Mo.1955), and *State v. Kirkland*, 471 S.W.2d 191 (Mo. 1971). In *Chernick*, the Supreme Court reversed the convictions because the circuit attorney was allowed to testify that immediately after he had questioned one of the participants in the crime, he directed the issuance of an arrest order for the defendant. The court held this to be error. "The subsequent statements of [one of the participants] to the Circuit Attorney were hearsay and inadmissible as evidence of the fact asserted." *Chernick v. State*, supra, 278 S.W.2d at 747. And in *State v. Kirkland*, supra, the court reversed a conviction because of the testimony of an officer who related the statement of a certain woman that defendant had taken the victim's taxicab, thus implicating the defendant. In these cases, "hearsay testimony was relied on heavily by the state to identify the defendant as the person who committed the crime and in which there was very little, if any, other evidence that connected the defendants in those cases with the offense with which they were charged. . . ." *State v. Ford*, 495 S.W.2d 408, 414 (Mo. banc 1973). The *Chernick* case involved a factual setting wherein the assistant circuit attorney was permitted to testify that he had ordered defendant's arrest after obtaining information from a hospitalized third party.

We do not believe that the principles set forth in *Chernick* and *Kirkland* are dispositive of the issue here. Those cases have been distinguished from the situation where the hearsay testimony was relied on heavily by the state to identify the defendant as the person who committed the crime and in which there was very little, if any, other evidence that connected the defendant with the offense charged. Those decisions have been distinguished. In *State v. Stevens*, 467 S.W.2d 10 (Mo.1971), 50 A.L.R.3d 96,

cert. den. 404 U.S. 994, 92 S.Ct. 531, 30 L.Ed.2d 546, the testimony of certain officers that they had a conversation with the mother of the defendant, proceeded to a high school and arrested him, was held to be admissible. What was said in the conversation was not shown, but appellant there objected to the question of whether there was a conversation because of hearsay. Reliance was placed on *Chernick*. The Supreme Court held that the testimony of the officers was not objectionable under the doctrine of *Chernick*, supra, because there was nothing to indicate that the declarant was a co-conspirator in the case, and, "[i]n addition, if it be considered that statements made by Mrs. Stevens would have been hearsay as to appellant, there was no statement attributed to her which implicated appellant . . .." *State v. Stevens*, supra, 467 S.W.2d at 22.

Such is the situation here. This is not a case where the "hearsay" testimony was relied on heavily to identify the defendant. There was other substantial evidence which implicated the appellant, and nothing in the radio description of the 1968 Oldsmobile implicated the defendant as the perpetrator of the alleged murder. It was just as logical for the jury to assume that the automobile was of interest to the police for a reason totally unrelated to the appellant and his connection with the murder.

We hold that under the circumstances of this case, the trial court did not err in admitting the testimony of Officers Ray and Dobbins regarding the stopping of the Oldsmobile and the appellant and reject the appellant's contention that this testimony introduced a distinct inference of defendant's guilt based solely upon hearsay.

Next, appellant contends that the court erred in not giving the offered instruction on manslaughter. The motion for new trial fails to allege facts warranting such an instruction. Supreme Court Rule 27.20(a) provides that a motion for a new trial ". . . must set forth in detail and with particularity, in separate numbered paragraphs, the specific grounds or causes therefor. . . ." The Missouri Supreme

Court, construing this rule in *State v. Cheek*, 413 S.W.2d 231, 238 (Mo.1967), stated:

> ". . . 'Among other assignments in the motion for a new trial is the contention that the court erred in refusing to instruct on manslaughter; that such an instruction was requested and refused and that the facts in the case warranted such an instruction. We think this assignment wholly insufficient, under the facts of this case, to comply with Supreme Court Rule 27.20 in that it does not set forth in detail and with particularity the specific grounds or cause therefor, in that it does not indicate in any manner what facts in evidence were considered sufficient to warrant such an instruction.' . . . In that situation we rule that this assignment wholly fails to comply with S.Ct. Rule 27.20(a) and hence does not preserve anything for review."

See also *State v. Schulten*, 529 S.W.2d 432 (Mo.App.1975).

■ Despite this, we have reviewed the transcript and determine that the refusal to give a manslaughter instruction in this case was not error. See *State v. Mudgett*, 531 S.W.2d 275, 280–281 (Mo. banc 1975). There the Supreme Court analyzed the many previous decisions, especially *State v. Ayers*, 470 S.W.2d 534 (Mo. banc 1971), and *State v. Stapleton*, 518 S.W.2d 292 (Mo. banc 1975), and concluded that the requirement of a submission of manslaughter "was not instituted by *Ayers*. Any contrary implication from the language appearing in *Stapleton* is unfortunate if 'automatic' submissions were made prior to March 1, 1975." *State v. Mudgett*, supra, 531 S.W.2d at 281.[2]

At the time this case was tried, the Notes on Use to MAI–CR 6.06 stated that "[a]n additional instruction on manslaughter should not be given unless there is evidence to support the giving of it. It should not be given automatically."

■ On this record, we declare as a matter of law that there was no evidence to support a submission of manslaughter, and the trial court did not err in refusing to give the requested instruction. The evidence showed that the victim was found in the home, the house was in disarray, items from the home were missing, the victim was shot six times, fingerprints of the defendant were found in the home, and the gun which he placed in the grass was the same gun used to kill the victim. Under these circumstances, there was no justification to instruct on manslaughter.

Lastly, appellant complains of the argument of the prosecutor with reference to the Grand Jury and of the court's denial of a request for a mistrial.

■ The declaration of a mistrial is a drastic remedy and should be exercised only in extraordinary circumstances where the prejudicial effect can be removed in no other way, *State v. Raspberry*, 452 S.W.2d 169, 173 (Mo.1970), or where the incident is so grievous that the prejudicial effect can be removed in no other way. *State v. Camper*, 391 S.W.2d 926, 928 (Mo.1965). For these reasons, whether the remarks of counsel require a mistrial and the discharge of the jury rest largely in the discretion of the trial court which has observed the incident giving rise to the request for mistrial and is in a better position than an appellate court to evaluate the prejudicial effect and possibility of its removal by action short of a mistrial. *State v. Camper*, supra, at 928. Our function is to determine whether, as a matter of law, the trial court abused its discretion to the prejudice of the appellant in refusing to declare a mistrial. *State v. Chester*, 445 S.W.2d 393, 399 (Mo.App.1969). When an improper incident occurs during the trial and the jury is instructed to disregard it,

> ". . . the reviewing court, in order to hold that the failure to grant a mistrial was reversible error, must determine and conclude as a matter of law from the entire record that the error was prejudicial and so impressive that its effect was

---

**2.** See the thorough discussion in Richardson, Lesser Graded or Included Offenses, Mo. Bar Comments on Missouri Approved Criminal Instructions at 18–20, and Scurlock, Manslaughter, Comments, supra, at 4–9.

not removed by the action of the trial court." *State v. Dennison*, 428 S.W.2d 573, 577 (Mo.1968).

■ We find no abuse of discretion here. We cannot conclude from the entire record that the trial court abused its discretion in overruling the request for mistrial because of the reference by the prosecutor. The court sustained the objection and instructed the jury to disregard the statement. The cases relied upon by appellant are inapposite. We find no error in this regard.

We have reviewed the entire record, the briefs of the parties, and the cases and authorities relied upon by the appellant and are convinced that there is no prejudicial error.

The judgment of conviction is affirmed.

KELLY and GUNN, JJ., concur.