STATE of Missouri, Respondent,

v.

Kenneth Orin GRISSOM, Appellant.

No. 44278.

Missouri Court of Appeals,
Eastern District,
Division One.

Nov. 9, 1982.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Dec. 17, 1982.

Application to Transfer Denied
Jan. 17, 1983.

James J. Knappenberger, Shaw, Howlett & Schwartz, Clayton, for appellant.

John Ashcroft, Atty. Gen., Kristie Green, Asst. Atty. Gen., Jefferson City, George Westfall, Prosecuting Atty., Clayton, for respondent.

STEPHAN, Judge.

The jury found the defendant guilty of robbery in the second degree in violation of § 569.030, RSMo 1978, and assessed punishment of five years in prison. Judgment and sentence were entered in accordance with the verdict and defendant appealed. We affirm.

Mr. and Mrs. Homer Guffey owned and operated a grocery store in Pacific, Missouri. They returned to their home on Highway N at approximately 10:30 p.m. on Friday, June 13, 1980. They had with them several thousand dollars in cash and checks—the grocery store receipts—in a produce box. Mr. Guffey remained at their van while Mrs. Guffey turned on the patio lights. She returned to pick up a box of gooseberries and had just unloaded them from the van when she saw two young men grab her husband. One man held her husband from behind and brought him to his knees. The other man approached Mrs. Guffey and she screamed. The man holding Mr. Guffey had bushy hair, a beard and mustache, and was wearing a t-shirt with a reflective emblem. She identified him at trial as defendant. The other man was wearing a mask and had no shirt. The man with the mask grabbed the box of money from the van after Mrs. Guffey screamed, and the pair fled.

Marie Dunham, a neighbor in a house to the west of the Guffeys', heard the scream, turned on her outdoor floodlights and looked out the window in time to see two men run across her yard from the direction of the Guffey home. She watched as the two men entered a red car and drove south on Highway N.

Another neighbor, to the east of the Guffeys', Kenneth Williams, also heard Mrs. Guffey scream and ran from his house to his automobile. He drove toward the Guffey home and saw an automobile headed toward him from the direction of the Guffeys' home. The oncoming vehicle made a "U" turn on the road that fronted both of their houses, and Williams gave chase. He lost sight of the car he was chasing for a moment, but not before he had a chance to note that it was a small red car and get the license number. When the small red car was again in view he saw it pass still another car, slide off the road and stop. Mr. Williams positioned his vehicle across the road with his headlights on the red car. A man with no shirt exited the car, hopped a fence and ran away. Mr. Williams watched as a young man, whom he identified at trial as defendant, walked around the small red car, inspecting it.

The young man returned to his car, backed onto the road and drove away at a high rate of speed. Mr. Williams followed until the red car turned left on Highway O. Then Williams returned to the Guffeys' home. From there he called the Pacific Police Department and gave them the description and license number of the car and a description of the driver. He telephoned the county sheriff's office and gave them the same information.

Deputy Sheriff Warner of the County Sheriff's Office reported for work at approximately 11 p.m. on June 13, 1980. He was informed of a recent robbery at the Guffey residence and that one suspect, a white male with long hair and a beard, was last seen driving a red car. He proceeded to search Highway O in the vicinity where

the red car was last seen. En route he learned from the radio dispatcher that the registered owner of the car was Kenneth Grissom, Sr. He also received a report from a Pacific, Missouri police officer that one Kenneth Grissom was running along Highway O.

The deputy saw a man running along Highway O. Sheriff Warner realized that the man fit the description he had, stopped him and asked for identification. When he learned the man was Kenneth Grissom, the deputy arrested him. ·

The deputy read the *Miranda* rights from a printed card and asked defendant if he understood. The defendant said he did and indicated he was willing to answer questions. The deputy asked him to explain where he had been that evening. The defendant answered that he had been in the neighborhood of his home all night until a few minutes earlier when he had left for his girlfriend's home in Pacific.

Sheriff Warner took defendant home, where he lived with his parents. There he met defendant's father, Kenneth Grissom, Sr., who was the registered owner of a small red car. The senior Mr. Grissom told the deputy that defendant had come home at approximately 11:30 p.m., dropped the car keys on the kitchen table, and left. The father gave the deputy permission to view the car and took him to the garage where it was parked. The deputy noted that the license number matched the license number broadcast by the dispatcher and that there was fresh damage to the right front fender.

Defendant attacks the propriety of his arrest, contending there was no probable cause. From this, defendant argues that his statement to the deputy and testimony concerning the deputy's observation of the automobile should have been suppressed.

The facts of this case present more than adequate justification for defendant's arrest. The deputy knew a robbery at the Guffey residence had been reported. Robbery is a felony. Section 569.030.2, RSMo 1978. He also knew one of the suspects was a man with long, bushy hair, mustache and beard, who was last seen in a small red car traveling on Highway O. Finally, he had information that car belonged to a person named Kenneth Grissom. That this information came to him indirectly from police sources is of no moment. *State v. Morgan,* 593 S.W.2d 256, 259 (Mo.App.1980).

■ Finding a young man whose distinctive appearance closely matched the description of one of the robbers, running along Highway O late at night, approximately one hour after the robbery, justified the deputy's actions. The defendant's resemblance to the robber and his identification of himself as Kenneth Grissom amply supported the reasonable belief that defendant committed the felony. There was probable cause for the arrest. See *State v. Carter,* 572 S.W.2d 430, 435[7] (Mo. banc 1978); *State v. Purnell,* 621 S.W.2d 277, 284 (Mo.1981). The defendant's remarks to the deputy and the examination of the red car are not fruit of an unlawful arrest.

As stated, defendant acknowledged that he understood his *Miranda* rights and answered the deputy's questions about his activities earlier that evening. According to the deputy, "He [defendant] stated that he had been at the Noonan residence which was just behind his house and that he had just brought his dad's car home and was going to Pacific to see his girl," when he was picked up. There was no indication in either the deputy's testimony or in that of defendant at trial of any prodding, coaching or threats by the deputy during the interrogation.[1]

---

1. As will be discussed below, defendant testified at trial that he had been at a party earlier in the evening "out by Catawissa," that he had left the party to visit his girlfriend in Pacific, that she could not return to the party with him because of babysitting responsibilities, and then he left in the small, red car, owned by his parents, to return to the party alone. On his way back to the party, another vehicle approached rapidly from behind, and defendant damaged the car he was driving in attempting to get off the highway. According to defendant, he then decided to take the car home and return to his girlfriend's home by hitchhiking. According to defendant, it was at this point he was arrested by the deputy. Even in defend-

■ The record supports the court's ruling that defendant's statements were admissible. See *State v. Ross,* 606 S.W.2d 416, 425[10] (Mo.App.1980). As to the examination of the car, it is sufficient to note that it was done with the father's permission and assistance. *State v. Worthon,* 585 S.W.2d 143, 148 (Mo.App.1979).

After the jury was sworn, but before opening statements, the court read several instructions to the jury as required by Rule 28.02(a). Among them was MAI–CR 2d 1.06. The court's copy of this instruction, supplied by the prosecution, omitted a line in the opening portion. This mistake was discovered by the judge as he was reading to the jury, and he supplied the missing matter from his own recollection without interrupting the instruction:

> THE COURT: The Court will now proceed to read you more instructions on the law.
>
> 'This case will proceed in the following order:
>
> 'First, the Court will read to you two instructions concerning the law applicable to this case and its trial. Next, the attorney for the state must make an opening statement outlining what he expects the state's evidence will be. The defendant's attorney is not required to make an opening statement then or at any other time. However, if he chooses to do so he may make an opening statement until the—'

It is supposed to say: '... he may make a statement then or at the conclusion of the state's evidence.'[2]

The opening portion of MAI–CR 2d 1.06 actually reads as follows, with the appropriate pronouns selected and the line missing from the court's copy underscored:

> 1.06 Instructions After Jury is Sworn
> This case will proceed in the following order:
> First, the Court will read to you two instructions concerning the law applicable to this case and its trial. Next, the attorney for the state must make an opening

statement outlining what he expects the state's evidence will be. The defendant's attorney is not required to make an opening statement then or at any other time. However, if he chooses to do so, he may make an opening statement *after that of the state, or he may reserve his opening statement* until the conclusion of the state's evidence.

> Evidence will then be introduced.

■ The defendant contends the court's reading of the instruction in this manner was prejudicial error. We disagree. Not every deviation from an approved instruction requires reversal, and when there is error the question of prejudice vel non is judicially decided. *State v. Harris,* 564 S.W.2d 561, 573 (Mo.App.1978). Of course, it would have been better to read the instruction exactly as it was adopted and printed. Yet the court's alert action and impressive memory avoided any prejudice. The mistake was immediately discovered and the omitted line was replaced with language virtually identical to that of the pattern instruction. It is inconceivable that the jury was confused or misled. *State v. Harris,* supra. The opinion of the Supreme Court reversing the conviction in *State v. Cross,* 594 S.W.2d 609 (Mo. banc 1980), cited by defendant, is of no precedential value in this case. There, the deviation from the approved introductory instructions was a voluminous and extemporaneous explanation of the instructions by the trial court. The irregularity in the reading of the instruction here was miniscule and immediately corrected.

Defendant argues that it was prejudicial error to permit Deputy Sheriff Warner to testify in the presence of the jury over defendant's objections, that Warner had received information over his radio that the small red auto was titled in defendant's father's name, and that a Pacific, Missouri police officer had told Warner that defendant was running along Highway O toward

---

ant's account of his arrest there is no suggestion that his *Miranda* rights were violated.

**2.** The rest of the instruction was then read to the jury verbatim.

Pacific. At the outset we note that, in overruling defendant's hearsay objections to this testimony, the trial court carefully advised the jury that the answers were being permitted, not to prove the truth of their substance, but "merely" to explain why Sheriff Warner detained Grissom. In that respect, the trial court stated that Warner's testimony as to his information did not prove "anybody owns anything" nor that "the Pacific police officer was right or wrong."

■ We find defendant's reliance on *State v. Kirkland,* 471 S.W.2d 191 (Mo. 1971), as grounds for reversal on this point to be misplaced. In *Kirkland,* evidence similar to that in question here was characterized as "powerful corroborating evidence of identification" of defendant as one of the robbers. *Id.,* 193. As the court noted there, the rationale for the reversal was that, if the claimed hearsay evidence was not correct, the defendant was probably not one of the robbers. Such is not the case here. The defendant was positively identified as the robber by Mrs. Guffey who witnessed the assault on her husband and by Mr. Williams who maintained his pursuit from the scene of the crime and viewed the defendant in the illumination of his headlights for a substantial period of time. Williams also gave a firsthand description of the vehicle and recounted the license number from the stand. Moreover, defendant's own testimony established his parents' ownership of the vehicle and corroborated his presence in the general vicinity of the crime running on a lonely country road late at night. As pointed out, the trial court effectively admonished the jury to disregard Sheriff Warner's testimony as to the truth of what he had been told. But, even if such directives fail to nullify the effect of the hearsay nature of the testimony, such testimony can only be regarded as cumulative of clearly admissible testimony, some of which came from defendant himself. "Admission of objectionable hearsay evidence will not constitute reversible error if, as a matter of law, it can be concluded that such hearsay is merely cumulative to other evidence fully proving the issue." *State v. Mills,* 521 S.W.2d 495, 497 (Mo.App.1975). See also *State v. Harris,* 535 S.W.2d 145, 149 (Mo. App.1976); *State v. Gibson,* 633 S.W.2d 101, 104 (Mo.App.1982).

Defendant also asserts that it was prejudicial error for the trial court to sustain the State's oral motion in limine and the granting of sanctions as to an alibi defense. A close reading of the record is required to determine that defendant apparently sought to produce his girlfriend, LaDonna Smith, to show that defendant was at her home in Pacific until about 10:15 p.m. on the night of the robbery, at which time he left to return to the party at Catawissa. According to defendant's brief, "(t)he purpose of the witness was to establish and to confirm his [defendant's] course of conduct that evening and specifically his whereabouts immediately before the alleged robbery." Several other witnesses are mentioned in the transcript and the trial court also stated they would not be permitted to give alibi testimony, but we are not informed either by the transcript nor by defendant's brief what their testimony would have been as to defendant's whereabouts at the time of the robbery, i.e., at about 10:30 p.m. on June 13, 1980. As to LaDonna Smith's expected testimony we are left with the bare speculation that defendant would have contended that if he had not left her house until about 10:15, he could not have been at the Guffeys' home some fifteen minutes later.

Further depriving defendant's assertion of error of any merit is the fact that on July 21, 1980, the State filed its request that the defendant disclose, "Any intent of the Defendant to rely on the defense of alibi, and specific information as to the place at which the accused claims to have been at the time of the alleged offense, together with the names and addresses of the witnesses by whom he proposes to establish such alibi." Such request is authorized by Rule 25.05. The request was ignored by defendant until March 6, 1981, the Friday before the trial commenced on Monday, March 9, 1981. The response listed LaDonna Smith and three others as persons

whom the defendant intended to call as defense witnesses generally. It then stated with respect to alibi, "The defendant intends to rely on the defense of alibi in that Defendant was traveling between the residence of LaDonna Smith, 420 Kathy Ln., Pacific, Missouri and the residence of Rick Cooper, Highway HH, Catawissa, Missouri. Alibi witnesses as listed above."

 The trial court ruled that, "The defendant, himself, will be permitted to testify to anything he wants," but stated that it would not permit testimony as to alibi from LaDonna Smith or the witnesses referred to "as listed above." The trial court's action in this regard was fully warranted by the defendant's utter disregard for the rules relating to such matters: the answer was not forthcoming within ten days of the request as required by Rule 25.02 or, indeed, at any period of time prior to trial which would have given the State a reasonable opportunity to investigate the matter; the answer was unresponsive to the request in that it did not specify where defendant claimed to be at the time of the robbery or how the witnesses "listed above" would establish such claim. Under the circumstances, exclusion of the evidence is authorized by Rule 25.16, and we find it difficult to construct a set of facts worthier of that sanction. Exclusion of evidence for violation of the discovery rules "issues on discretion, not disturbed on appeal unless the choice of sanction results in a fundamental unfairness to the defendant." *State v. Brydon,* 626 S.W.2d 443, 453 (Mo.App. 1981). We perceive no "fundamental unfairness" to defendant in excluding testimony of witnesses, who as far as we can determine from the transcript and defendant's brief, could but testify that he was neither at his girlfriend's house nor at the party in Catawissa when the crime was committed.

Finally, we come to defendant's claim of reversible error in the trial court's failure to grant a mistrial arising out of the prosecutor's first question to him on cross-examination: "Ken, have you had an opportunity to discuss this case as far as the potential punishment for this crime?" Before there was any answer, the defense counsel objected that the question was irrelevant. The objection was immediately sustained, whereupon defense counsel moved for a mistrial, adding, "And may we approach the bench on that?" Out of the hearing of the jury, the following colloquy occurred:

MR. KNAPPENBERGER: Now, Judge, I want to object to him insinuating that the defendant is saying anything or not because of the punishment. That's completely irrelevant and has nothing to do with what I said on my direct examination and I move for a mistrial and in the alternative move it be stricken and the jury admonished.

MR. UPCHURCH: Your Honor, it goes to the prejudice and bias of the witness.

THE COURT: I think it's out of bounds. The motion is sustained—the objection is sustained. Motion for mistrial is overruled. I will admonish the jury.

The trial court then stated to the jury, "The jury is instructed to disregard the last question and any outbreaks from any source that immediately followed it."

 It is to be noted that defense counsel's request for a mistrial was *in the alternative,* i.e., either that a mistrial be granted or that the question be stricken and the jury admonished. The trial court granted the alternative by sustaining the objection and admonishing the jury, thus giving defense counsel what he sought. Having received his relief, defendant cannot now be heard to complain that the trial court should have gone beyond the alternative and ordered the drastic relief of mistrial. *State v. Rutherford,* 554 S.W.2d 584, 587 (Mo.App.1977). See *State v. Granberry,* 530 S.W.2d 714, 727 (Mo.App.1975). The trial court observed the incident and was in a much better position than this court to determine which of the two remedies sought was the more appropriate, keeping in mind that the declaration of a mistrial "should be resorted to only when the incident is so grievous that the prejudicial effects can be removed no other way." *State v. Brooks,* 567 S.W.2d 348, 353 (Mo.App. 1978).

Appellant seeks to buttress his attack on the propriety of the one question on cross-examination concerning defendant's knowledge of potential punishment by arguing that it set the stage for improper closing argument by the prosecutor. In the argument, the prosecutor pointed out that the Guffeys had nothing to gain by fabricating their testimony, noting that, "The money's gone." A defense objection that, "There was no evidence about that ..." was sustained and, on defense counsel's request, stricken. The prosecutor continued, "There is nothing to gain for them. I would like you to weigh that against the defendant's testimony. What does he have to gain?" A defense objection "to that inference" was overruled.

 Apparently, defendant seeks a ruling that this argument, viewed against the backdrop of the stricken question, required the trial court to order a mistrial sua sponte. We do not believe any such action was required or even appropriate. The prosecutor's argument was a permissible challenge to the credibility of defendant who clearly had the most to gain if the jury believed his testimony that he was totally innocent of the robbery. "[W]hen a defendant offers himself as a witness in his own behalf, his testimony is subject to the same arguments on the issue of credibility as any other witness." *State v. Heinz,* 607 S.W.2d 873, 880 (Mo.App.1980). The argument was but an utterance of the obvious. By any measure of sophistication, the jury, as well as defendant, knew that punishment would likely follow a finding of guilt. The argument was permissible.

The judgment is affirmed.

STEWART, P.J., and CRANDALL, J., concur.