**STATE of Missouri, Respondent,**

v.

**Charles Wesley WILLIAMS, Appellant.**

**Charles Wesley WILLIAMS, Movant,**

v.

**STATE of Missouri, Respondent.**

**Nos. WD 42826, WD 43746.**

Missouri Court of Appeals,
Western District.

July 16, 1991.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 27, 1991.

Application to Transfer Denied
Oct. 16, 1991.

Raymond L. Legg, Columbia, for appellant.

William L. Webster, Atty. Gen., Millie Aulbur, Asst. Atty. Gen., Jefferson City, for respondent.

Before BERREY, P.J., and GAITAN and ULRICH, JJ.

ULRICH, Judge.

Charles Wesley Williams was convicted by a jury of first degree assault, § 565.050, RSMo 1986,[1] unlawful use of a weapon, § 571.030, and armed criminal action, § 571.015. The Circuit Court of Boone County, Missouri, sentenced Mr. Williams as a prior and persistent offender to twelve years imprisonment for assault, a concurrent term of eight years imprisonment for unlawful use of a weapon, and a consecutive term of three years imprisonment for armed criminal action. Mr. Williams subsequently filed a Rule 29.15 motion for postconviction relief which the circuit court denied following an evidentiary hearing. On appeal, Mr. Williams contests the convictions and denial of postconviction relief.

On May 24, 1989, at approximately 6 p.m., Kenneth Jones was seated inside a 1975 Buick Electra parked on Elleta Boulevard in Columbia, Missouri. The Buick Electra was owned by Ricky Jones, who was standing outside of the automobile conversing with a friend. Also seated in the automobile with Kenneth Jones were Phillip McDuffey, Nikki Redd, Valerie Brown, and Valerie Brown's two young daughters.

The evidence, viewed in the light most favorable to the verdict, reveals that at approximately 6 p.m. Charles Wesley Williams was present with other individuals

in a Chevrolet Impala also on Elleta Boulevard. The driver of the Impala parked across Elleta Boulevard from Mr. Jones' Buick Electra. Mr. Williams exited the Impala and yelled Kenneth Jones' name. Kenneth Jones recognized Mr. Williams from prior encounters between the two men which had resulted in arguments. Upon recognizing Mr. Williams, Mr. Jones exited the Buick Electra. According to the testimony, Kenneth Jones approached Charles Williams and said, "Man, I been lookin' for you." Mr. Williams responded, "Man, I been lookin' for you." An argument ensued between the two men.

As the argument between the two men progressed, Mr. Jones stepped back, reached behind his back with both hands, and pulled at his pants. Mr. Williams responded by drawing a hand gun. Kenneth Jones ran towards the Buick Electra and Mr. Williams fired a shot at him. Kenneth Jones dove into the front passenger side of the Buick Electra where Valerie Brown and one of her young daughters were seated. As Mr. Jones entered the car, Mr. Williams fired a second shot at him hitting the vehicle's passenger side front door. After Kenneth Jones had escaped into the automobile, Mr. Williams walked to the rear of the Buick Electra and fired one shot at the rear windshield. Following the shooting, Mr. Williams fled the scene in the Chevrolet Impala.

At approximately 6:05 p.m., the Columbia, Missouri Police Department received a call reporting the shooting on Elleta Boulevard. Upon arrival, the police discovered the Buick Electra with the rear windshield shot out, a bullet lodged in the dashboard, and a bullet lodged in a passenger side front door. The police found the Chevrolet Impala parked one block from the scene of the shooting. The police also found a gun holster in the Impala. Mr. Williams was subsequently charged and convicted by a jury of first degree assault, unlawful use of a weapon, and armed criminal action.

Mr. Williams filed a Rule 29.15 motion for postconviction relief. Following an evidentiary hearing, the circuit court denied Mr. Williams' request for postconviction relief. Mr. Williams consolidates his appeal from the circuit court's denial of postconviction relief with his appeal from the convictions.

On appeal, Mr. Williams contends that the trial court (1) violated his constitutional right to be free from double jeopardy by charging him with first degree assault and the lesser-included offense of unlawful use of a weapon; (2) plainly erred in failing to, *sua sponte*, submit a jury instruction for use of force in self-defense; and (3) erred and abused its discretion in refusing to allow Howard Williams to testify. Additionally, Mr. Williams contends (4) that the circuit court erred in denying his motion for postconviction relief because he received ineffective assistance of counsel at trial. The convictions and denial of postconviction relief are affirmed.

For point (1), Mr. Williams contends that the trial court violated his right to be free from double jeopardy by allowing the State to charge and convict him of unlawful use of a weapon. In particular, Mr. Williams contends that unlawful use of a weapon constitutes a lesser-included offense for the crime of first degree assault and does not require proof of any additional fact not required to establish guilt of first degree assault.

In determining double jeopardy, Missouri courts follow the separate or several offense rule rather than the same transaction rule. *State v. Carter*, 535 S.W.2d 537, 538 (Mo.App.1976). The separate or several offense rule "means that a defendant can be charged with and convicted of several offenses which arise from the same transaction, incident or set of facts, without violation of double jeopardy." *Id.* In Missouri, the courts follow the test established by the United States Supreme Court in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), to determine whether a criminal defendant has been subjected to double jeopardy. *See State v. Pollock*, 738 S.W.2d 531, 532 (Mo.App. 1987); *State v. Whitehead*, 675 S.W.2d 939, 943 (Mo.App.1984). In *Blockburger*, the Court stated:

The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not. 284 U.S. at 304, 52 S.Ct. at 182.

In applying *Blockburger*, Missouri courts have previously determined that, "[t]he ... charges of assault first degree under Section 565.050.1(1) RSMo. an unlawful use of a weapon, Section 571.030.1(4) RSMo., clearly are separate statutory offenses, each requiring distinct elements of proof not required by the other." *Whitehead*, 675 S.W.2d at 943.[2] The court in *Whitehead* held, "where a defendant is charged with several crimes in the same series of events and each crime requires proof of a fact distinct from the others, then there is no double jeopardy even if there is some overlap in the proof necessary to establish the crimes." *Id.* Additionally, "[t]he fact that these elements may have occurred as a continuous course of conduct in a relatively short span of time does not prohibit the State of Missouri from charging two separate crimes." *Id.* at 943–44.

Mr. Williams relies upon *State v. Sloan*, 786 S.W.2d 919 (Mo.App.1990), as support for his contention that the convictions for first degree assault and unlawful use of a weapon violated his constitutional right to be free from double jeopardy. In *Sloan*, the defendant fired a single shot at the mobile home where his estranged wife was living. *Id.* at 920. The defendant's wife was in the mobile home's bathroom at the time she heard the shot ring out. *Id.* The defendant's wife later found a hole in the bathroom window and the mirror in the bathroom broken. *Id.* at 921. The defendant was convicted of unlawful use of a weapon and first degree assault. *Id.* at 920. The court, in *Sloan*, stated, "[t]he state concedes that based on the facts of the instant case, Sloan's right to be free from double jeopardy was violated." *Id.* at 923.

■ However, the facts of *Sloan* are distinguishable from the present case. In *Sloan*, the defendant fired a single shot which constituted the factual basis for both charges of unlawful use of a weapon and first degree assault. In the instant case, Mr. Williams, as part of a continuous course of conduct, fired two separate shots at Kenneth Jones and a shot at the automobile in which Mr. Jones and others were present. Therefore, the same act is not the basis of the convictions for unlawful use of a weapon and first degree assault as in *Sloan*. Mr. Williams committed "several crimes in the same series of events and each crime requires proof of a fact distinct from the others...." *Whitehead*, 675 S.W.2d at 943. The convictions for unlawful use of a weapon and first degree assault do not violate the standard established in *Blockburger*. Point (1) is denied.

■ For point (2), Mr. Williams contends that the trial court committed plain error in failing to, *sua sponte*, submit a jury instruction on the use of force in self-defense. If substantial evidence is presented to put self-defense in issue, the trial court must submit an instruction to the jury on self-defense regardless of whether the defendant requests the instruction and irrespective of the source of the evidence. *State v. Hajek*, 716 S.W.2d 481, 483 (Mo. App.1986). Additionally, in determining whether a self-defense instruction should have been submitted to the jury, the evidence must be viewed in the light most

---

2. Section 565.050.1 defines the crime of first degree assault and provides in part:

   A person commits the crime of assault in the first degree if he attempts to kill or knowingly causes or attempts to cause serious physical injury to another person.
   *Id.*
   The crime of unlawful use of a weapon is defined by statute as follows:

   A person commits the crime of unlawful use of weapons if he knowingly:

   *       *       *       *       *

   Discharges or shoots a firearm into a dwelling house, a railroad train, boat, aircraft, or motor vehicle....
   § 571.030.1(3).

favorable to the defendant's theory of self-defense. *Id.*

In *Hajek*, the court provided the test for determining whether a defendant is entitled to a self-defense instruction. The court in *Hajek* held:

> In order to claim self-defense, the defendant (a) must not have provoked or been the aggressor in the assault; (b) must have reasonable grounds for the belief that he is faced with immediate danger of serious bodily injury; (c) must not use more force than that which appears reasonably necessary; and (d) must do everything in his power consistent with his own safety to avoid the danger and must retreat if retreat is practicable.

*Id.*

Additionally, if the defendant is the initial aggressor, he may be entitled to a self-defense instruction if the evidence demonstrates that he effectively withdrew from the conflict. In *State v. Dunlap*, 639 S.W.2d 201 (Mo.App.1982), the court stated:

> In self defense, a withdrawal is the abandonment of the struggle by one of the parties. *State v. Mayberry*, 360 Mo. 35, 226 S.W.2d 725, 727 (1950). To be a withdrawal, "there must be substantial evidence showing an abandonment of the struggle by the defendant operating as a clear announcement of his desire for peace; and [these facts] must be perceived by or made known to his adversary." *State v. Gadwood*, 342 Mo. 466, 116 S.W.2d 42, 57 (1937). The withdrawal must be made in good faith and not be a retreat which may be simply a continuance of hostilities. *See State v. Mayberry, supra* 226 S.W.2d at 727; *State v. Heath*, 237 Mo. 255, 141 S.W. 26, 29 (1911).

*Id.* at 205. Thus, to demonstrate the need for a self-defense instruction, substantial evidence must demonstrate that Mr. Williams was either not the initial aggressor or, if he was the initial aggressor, effectively withdrew from the conflict as defined in *Dunlap*.

Kenneth Jones was seated in the Buick Electra on Elleta Boulevard when Mr. Williams arrived in the Chevrolet Impala, exited the automobile, and approached and confronted Mr. Jones. Significantly, during this series of events Mr. Williams was harboring a hand gun. Thus, given these facts the record is void of substantial evidence to support a finding that Mr. Williams was not the initial aggressor in the assault. Phillip McDuffey testified at trial that as the argument between Kenneth Jones and Mr. Williams continued, Mr. Williams stated that he did not want to fight, that he wanted to "leave it alone." However, where the initial aggressor stands in front of the initial victim continuing the argument and harboring a pistol, such actions cannot be considered "substantial evidence showing an abandonment of the struggle by the defendant operating as a clear announcement of his desire for peace...." *Dunlap*, 639 S.W.2d at 205. Point (2) is denied.

For point (3), Mr. Williams contends that the trial court erred in refusing to allow his father, Howard Williams, to testify at trial on his behalf. Prior to trial, the State made a written request for disclosure of all alibi witnesses pursuant to Rule 25.05(A). In response, Mr. Williams' attorney listed the defendant, Charles Williams, as an alibi witness but failed to name his father, Howard Williams, as a potential alibi witness. Mr. Williams' attorney explained to the trial court that he erred in transposing the defendant's name for his father's name when completing the list. Defense counsel requested that Howard Williams be permitted to testify despite the fact that he was not disclosed as required by Rule 25.05(A). The State objected on the basis of the defendant's failure to disclose the witness' name. The trial court sustained the State's objection and did not allow Howard Williams to testify.

Charles Williams testified at trial on his own behalf and claimed that, on the date of the shooting, between 4 p.m. and 5:30 p.m. he was at his father's house. Mr. Williams stated that at 5:30 p.m. he went to visit a friend, Rollin Thompson. Mr. Williams further testified that he returned to his father's house at approximately 6:30 to 7:00 p.m. on the evening of the shooting.

On two occasions prior to trial, Rollin Thompson corroborated Mr. Williams' alibi by stating that the defendant had visited his house at approximately the time of the shooting. However, when called at trial, Mr. Thompson stated that he had lied on the prior occasions and that Mr. Williams did not visit his house on that date. At the evidentiary hearing for Mr. Williams' Rule 29.15 motion for postconviction relief, Howard Williams testified. The father's testimony provided that his son was at his home from 4:00 p.m. to approximately 5:30 p.m. on the date of the shooting. Additionally, Mr. Williams corroborated his son's testimony that he returned to the family home at approximately 6:30 or 7:00 p.m. However, the father did not provide testimony regarding his son's whereabouts between 5:30 p.m. and 6:30 p.m. on the evening of the shooting.

■ The trial court is granted discretion in determining whether a witness should be permitted to testify when the defendant violates a discovery rule. *State v. Bolen,* 731 S.W.2d 453, 460 (Mo.App.1987). This court's review is limited to determining whether the trial court abused its discretion, *id.,* and the trial court's decision will not be disturbed on appeal unless the trial court's action results in fundamental unfairness to the defendant. *State v. Grissom,* 642 S.W.2d 941, 946 (Mo.App.1982).

■ Mr. Williams relies upon *State v. Mansfield,* 637 S.W.2d 699 (Mo. banc 1982), and *State v. Gooch,* 659 S.W.2d 342 (Mo. App.1983), as support for his contention that the trial court erred in refusing to allow his father to testify. In both *Mansfield* and *Gooch,* the court determined that the trial court abused its discretion in refusing to allow the defendant to call a proposed alibi witness despite the fact that the defendant failed to disclose the alibi witness as required by the rules of criminal procedure. *Mansfield,* 637 S.W.2d at 703–04; *Gooch,* 659 S.W.2d at 344. However, the facts of *Mansfield* and *Gooch* are distinguishable. In both *Mansfield* and *Gooch,* the proposed alibi witness's testimony would have established the defendant's whereabouts at the time that the state al-

leged the crime was committed. *Mansfield,* 637 S.W.2d at 702; *Gooch,* 659 S.W.2d at 343. In the present case, Mr. Williams' father's testimony could not have established defendant Williams' whereabouts at the time that the shooting occurred on Elleta Boulevard.

The situation presented in this case is similar to the facts in *Grissom,* 642 S.W.2d 941. In *Grissom,* the defendant failed to disclose the name of an alibi witness that he intended to call at trial until three days prior to trial. *Id.* at 945. The defendant, in *Grissom,* was convicted of committing a robbery. *Id.* at 942. According to the evidence in *Grissom,* the crime occurred at approximately 10:30 p.m. *Id.* The defendant attempted to call his girlfriend as an alibi witness at trial. *Id.* at 945. The defendant's girlfriend's proposed testimony would have established the defendant's whereabouts until 10:15 p.m. on the evening of the crime. *Id.* At approximately 10:15 p.m., the defendant left his girlfriend's house to return to a party. *Id.* The defendant contended that if he had left his girlfriend's house at approximately 10:15 p.m., he could not have been at the scene of the robbery some fifteen minutes later. *Id.* In *Grissom,* the court concluded:

> We perceive no "fundamental unfairness" to defendant in excluding testimony of witnesses, who as far as we can determine from the transcript and defendant's brief, could but testify that he was neither at his girlfriend's house nor at the party ... when the crime was committed.

*Id.* at 946.

This court perceives no fundamental unfairness in excluding the testimony of Howard Williams as an "alibi witness" because the witness is not capable of establishing the defendant's whereabouts at the time the crime was committed. Additionally, the testimony established that Howard Williams' home was two or three miles from the scene of the shooting. Thus, the record fails to support a claim that Mr. Williams could not have left his father's house at 5:30 p.m. and, traveling in the

Chevrolet Impala, have arrived on Elleta Boulevard at the time of the shooting. Point (3) is denied.

For point (4), Mr. Williams contends that the circuit court erred in denying his Rule 29.15 motion for postconviction relief. Mr. Williams claims that the evidence presented at the evidentiary hearing for his Rule 29.15 motion establishes that he received ineffective assistance of counsel. In particular, Mr. Williams contends that his trial counsel's failure to properly list his father, Howard Williams, as a proposed alibi witness violated his constitutional right to receive effective assistance of counsel.

■ Mr. Williams bears the burden of proving his alleged grounds for postconviction relief by a preponderance of the evidence. Rule 29.15(h). This court's review is limited to determining whether the circuit court's judgment is clearly erroneous. Rule 29.15(j). The circuit court's determination is deemed clearly erroneous only if a review of the entire record leaves this court with a firm impression that a mistake has been made. *State v. Taylor*, 778 S.W.2d 276, 280 (Mo.App.1989).

■ In order to prevail on his claim, Mr. Williams must demonstrate that (1) his trial counsel failed to exercise the customary skill and diligence that a reasonably competent attorney would exercise in similar circumstances, and (2) that he was prejudiced as a result. *Id.* If Mr. Williams fails to demonstrate the requisite prejudice, this court may dispose of his claim without addressing counsel's performance. *Sidebottom v. State*, 781 S.W.2d 791, 796 (Mo. banc 1989), *cert. denied,* — U.S. ——, 110 S.Ct. 3295, 111 L.Ed.2d 804 (1990). In order to show sufficient prejudice, Mr. Williams must demonstrate a reasonable probability that, but for counsel's allegedly unprofessional performance, the result of the proceeding would have been different. *Lamphier v. State*, 773 S.W.2d 868, 870 (Mo.App.1989). Additionally, for his claim of ineffective assistance of counsel based upon his attorney's failure to call an alibi witness, Mr. Williams must demonstrate that, if called, the witness's testimony would have provided him with a viable defense. *Canterbury v. State*, 781 S.W.2d 107, 110 (Mo.App.1989).

■ As discussed above, Mr. Williams' father's testimony could not have provided the defendant with an alibi at the time of the shooting. Rather, Howard Williams' testimony would have corroborated his son's testimony regarding his whereabouts prior to and after the crime. As such, Mr. Williams failed to demonstrate that his father's testimony would have provided him with a viable defense. Therefore, Mr. Williams failed to demonstrate a reasonable probability that, but for counsel's allegedly unprofessional performance, the result of his trial would have been different. The circuit court's judgment denying postconviction relief is not clearly erroneous. Point (4) is denied.

The convictions for first degree assault, unlawful use of a weapon and armed criminal action, and the circuit court's denial of postconviction relief are affirmed.

All concur.